Van Beuren   the exercise of a sound discretion, I think enough is shown
v.
Van Gaasbeck.  to require the granting a new trial on the ground of sur-
              prise.    A verdict, under the circumstances of this case,
              should not be conclusive.    There is strong negative evi-
              dence, making it improbable that such a letter was written.
              The transaction requires the scrutiny of another trial.

                                              New trial granted.

---

## VAN BEUREN AND VAN GAASBECK, Executors of GROEN, *against* VAN GAASBECK.

Interest is
not allowable
on an unliqui-
dated account
for goods sold
and work done,
unless there be
an agreement
express or im-
plied to allow
interest.

And where
the defendant
owed the plain-
tiffs' testator,
on a secu-
rity drawing
interest, which
lay unpaid for
more than 30
years, and, du-
ring all this
time, the de-
fendant had an
account accu-
mulating a-
gainst the
plaintiffs' tes-
tator for work
done and goods
sold, at short
periods, which
had never been
liquidated or
settled, a-
mounting, in
the end, to

DEBT on bond, given by the defendant to the testator,
tried at the Ulster circuit, November, 1823, before BETTS,
C. Judge.

The bond was dated February 6th, 1786, and condition-
ed to pay $712 50, February 6, 1787, with interest at and
after the rate of 6 per cent, per annum, on which was en-
dorsed £9, November 19, 1794, and £29 in 1813, and £29
in the same year.

The defendant claimed to set off an account in his favor,
against the testator, running from July, 1781, to May, 1820,
containing charges in almost every month of the interme-
diate years, for some small articles of service, or goods sold,
such as usually pass in trade and interchange of labor, be-
tween farmers, amounting to $1187 50.

Both the bond, endorsements and the account, after de-
ducting a small account of the plaintiffs, were admitted;
and it was agreed that the balance should be set off against
the bond; and the only question was whether interest
should be allowed on the bond, and for how long, and
whether, without making the account apply from time to
time as payment upon it; or whether interest should not
be allowed upon the account, which had never been footed
up or settled.

more than the principal sum due by the bond; *held*, that interest should be allowed on the
bond, but not on the account; and that the latter should not, in adjusting the balance, be al-
lowed, from time to time, as payment on the bond.

Rules of set off the same at law as in equity.

A verdict was taken for the plaintiff, for $1000, subject to the opinion of this Court, upon the above points. The balance to be struck by a referee named by the parties, according to the rules to be laid down by the Court.

· The Judge, at the Circuit, decided, that the bond drew interest from its date, at 6 per cent. and no more, and that interest should be denied on the account.

*Ruggles & Hasbrouck*, for the plaintiffs.

*J. Sudam*, for the defendant.

*Curia*, per WOODWORTH, J. The bond is conditioned for the payment of interest, at the rate of 6 per cent. per annum. The contract of the parties is not confined to the time limited for the payment of the principal; but is general, and continues until the contract ceases to operate. (4 John. Ch. R. p. 437.)

At the trial, the defendant exhibited an account against the plaintiffs' testator, commencing in 1781, and ending in 1820, which was admitted. An account of the plaintiffs against the defendant was also admitted; and it was agreed, that the balance should be considered applicable, as a set-off against the plaintiffs' demand.

The only question is, whether the defendant is entitled to interest. The bond is dated in 1786, payable in 1787; and the charges in the defendant's account are subsequent to that period, with the exception of a small part.

From the nature of the transaction, it is probable, that, had the question been disposed of by the testator in his lifetime, the apparent equity of allowing interest, on the defendant's account, or considering the advances made as payment at the time, would not have been disregarded. The Court, however, are called on to apply a general rule, which cannot notice the supposed hardship of a particular case.

Considerable stress is put, by the defendant's counsel, on the fact that the account was not disputed. This cannot be a material fact. I cannot perceive any just cause for allowing a party a benefit, when the account is not disputed, that would not equally be allowable in a case where

it was disputed, but clearly and satisfactorily proved. The true question is, has the account been liquidated, or was there an agreement, express or implied, to pay interest? Admitting on the trial, that the balance claimed was correct, is no evidence of a previous liquidation upon which to allow interest. It does not appear that any communication ever took place between the parties, respecting the accounts, from their commencement to their termination. They must, therefore, be considered as unsettled and unliquidated. (3 Cowen, 393.) If the defendant had not been indebted to the testator on a security carrying interest, his equity would be the same. If he had prosecuted as plaintiff, no interest would be allowed. The fact that he was holden to pay interest to the testator, cannot affect the principle which is to govern. It shows, indeed, the consequences arising from his negligence and inattention to his rights, which might have been avoided; but nothing more. It presents no fact upon which the Court can infer an implied agreement to pay interest, that would equally apply to every just account of long standing.

But it is contended that the Court are authorized to order rests to be made, in stating the account by referees, under the statute of set-off, in the same manner as is done by the Court of Chancery. At common law, if the plaintiff was indebted to the defendant, in as much, or even more than the defendant owed to him, yet he had no method of striking a balance. The only way of obtaining relief was by going into a Court of Equity. I am not, however, aware, that when resort was had to that Court, the question of interest, on unsettled and unliquidated accounts, was governed by a different rule from that which was sanctioned at law. I have always supposed that, in this respect, the same rule prevailed. In the case of *Borret* v. *Goodere*, (1 Dick. 428,) Ld. Camden observed, there is no instance where interest is given on an open mutual account, without some particular circumstances. So also, in *Consequa* v. *Fanning*, (3 John. Ch. Rep. 601,) it was held that unsettled accounts do not bear interest of course, until liquidation. Indeed, it may be laid down as an established proposition, that a Court of Equity follows the same general rules as a Court

of law, in relation to set-off. (*Duncan* v. *Lyon*, 3 John. Ch.
Rep. 358.) The statutes concerning set-off and reference
are remedial; but confer no power on the Court to relax
the general rules of law. The question of interest is the
same, whether a cause is tried by referees, or a jury, or
whether an account is pleaded by way of set-off, or consti-
tutes the plaintiff's cause of action.

The doctrine, then, of rests, ought not to be applied; be-
cause the law does not allow interest on unliquidated ac-
counts: and Equity follows the same rule.

Accounts have frequently been directed, by the Court of
Chancery, to be taken with annual rests. Where an exe-
cutor, administrator, or trustee profits from the use of the
trust funds, or negligently suffers the trust money to lie
idle, he will be charged with interest: and the Court will
exercise its discretion as to making annual rests. But this
is altogether distinct from the claim of interest on unliqui-
dated accounts not containing charges for money. To al-
low rests in this case, for the purpose of calculating interest,
would, in my view, be arbitrary, not warranted by any
rule of law, or sanctioned by the practice of a Court of
Equity in analogous cases. I am of opinion, that the de-
fendant's account, without interest, (after deducting the
amount of the testator's account,) be allowed as a set-off
against the balance due on the bond; and that the referee
agreed on make the calculation accordingly.

Rule accordingly.

## GENERAL RULE.

IN SUPREME COURT, May 21st, 1825.

ORDERED, that when there shall be a stipulation in a
case, giving either party leave to turn the same into a spe-
cial verdict, or bill of exceptions, the party to whom that
right shall be reserved, shall have thirty days after the ad-
journment of the Court, at the term when judgment shall

NEW YORK,
.May, 1825.

General Rule.

be given, to prepare and serve such special verdict, or bill of exceptions. And, if the same shall not be agreed to by the party upon whom the same shall be served, he shall have twenty days to prepare and serve amendments; and in case such amendments shall not be agreed to, the same shall be settled by one of the Justices of this Court, on a notice to be given, within ten days after service of such amendments. And in case such special verdict, or bill of exceptions, shall not be served within the said thirty days, the prevailing party shall be at liberty to perfect his judgment, and proceed thereon. And in case no amendments shall be proposed and served within the said twenty days allowed for that purpose (or within such further time as shall, upon special application, be allowed by one of the Justices of this Court,) the special verdict or bill of exceptions shall be deemed assented to, as prepared and served.(a)

(a) Vid. *Jackson* v. *Sinclair*, ante, 43, and *Vandyck* v. *Van Buren*, 1 Jaines' Rep. 13.