THOMAS S. WHITTACRE and GEORGE C. STARBUCK, and HARRIET M. HAYES, Appellants, against ALPHEUS G. FULLER, et als, Respondents.

APPEAL FROM THE DISTRICT COURT OF RAMSEY COUNTY.

A first mortgage upon property was given to secure a note of $3,000, bearing interest at two and one half per cent. per month, payable semi-annually. The record of the mortgage did not show that the note drew any greater rate of interest than seven per cent. per annum. After the note became due, in consideration of an extension of time for its payment, the mortgagor agreed to keep the interest then due for one year at three per cent. per month, payable quarterly, and to pay interest on the principal quarterly, and if not paid when due to pay interest at five per cent. per month until paid. This agreement was endorsed on the back of the note, expressed the consideration, and was signed by the mortgagor. Various payments were made on the note at different times, as interest upon the principal, and interest in accordance with this agreement. One of these payments, to wit, $264, formed part of the consideration of a note for $1,694.88, the balance of which was given for arrears of interest claimed to be due up to the date of this new note, to wit, November 5, 1856, on which day the mortgagor gave another mortgage upon the property to secure said note of $1,694.88, but which was not recorded until July 28, 1857. There was also a second lien upon the same property, to wit, a mortgage in favor of one Hayes, dated October 24, 1855, recorded November 3, 1855, to secure a note for $1,800, and interest after maturity at five per cent. per month; and a third lien, to wit, a judgment against the mortgagor, in favor of Banning & Co., rendered and docketed April 6, 1857, for $3,156.85, upon which execution had been issued, the mortgaged property sold, and bid in by the judgment creditors. The Defendant Emmett purchased the certificate of sale and received the Sheriff's deed upon the expiration of the time for redemption allowed by law. On the 30th April, 1858, the mortgagor sold the mortgaged property to one Gay, who afterwards, on the 15th July, 1858, sold to the Defendant Emmett, who went into possession Oct. 1, 1858. There was nothing in the record of the second mortgage to show that it secured interest on the note therein mentioned at a greater rate than seven per cent. per annum. The purchasers at the execution sale under the Banning & Co. judgment, had no notice of the mortgages, nor of the interest on the notes secured thereby, other than that conveyed by the records thereof. The agreement for an extension made upon the back of the note first described, was made without the knowledge or consent of, and without notice to, any of the subsequent encumbrancers, and no record was made thereof. They had no notice of the mortgage given to secure the note for $1,694.88 until the same was recorded. *Held* that the first mortgage, as between the original parties, is a lien upon the premises to the amount due upon the note, according to the legal amount of interest secured thereby; but subsequent encumbrancers are bound by nothing more than the record discloses (no express notice having been proved); and as to the second mortgagee, the interest must be computed on the principal up to the time when a payment was made at seven per cent. per annum, then add the same to the principal, deduct the payment from the amount, the balance to form a new principal, on which interest is to be computed in the same manner. The payment of $264, which formed a part of the note for $1,694.88, was binding between the parties, and the subsequent encumbrancers may claim it as a payment. The extension of time evidenced by the agreement of February 13, 1856, did not discharge the original mortgage as to the subsequent encumbrancers. The payments of interest made upon the original note left only $433, due for interest on the 5th November, 1856, and therefore there was no consideration for the note and mortgage for $1,694.88 of that date, except to the amount of $433. And this is postponed to the lien of the Banning & Co. judgment, as (prior to the *Statute of* 1858) the lien of a judgment attached from the date of the docketing thereof, as against all unrecorded conveyances except those of *bona fide* purchasers for a valuable consideration; and a party taking a conveyance of real estate in payment of a precedent debt, was not entitled to protection as a *bona fide* purchaser. The mortgagee in this mortgage parted with nothing on the faith of the property, and took it only as security for a precedent debt, without relinquishing any personal claim for the debt upon the debtor himself. The Defendant Emmett occupies the same position with reference to the application of the payments as the owner of the second incumbrance, being a *bona fide* purchaser under the Sheriff's deed, and from the mortgagor's grantee; and is entitled to have the payments applied to reduce the liens as they appear of record. As the mortgagor included property not covered by the first mortgage, the Defendant Emmett may insist that the owner of the second mortgage shall satisfy the debt out of such property so far as the same is sufficient therefor; or if the owner of the second mortgage redeem under the first, without foreclosing, the Defendant Emmett is entitled to be subrogated to his rights in the mortgage by satisfying the amount due by the terms thereof.

Points and Authorities of Appellants, Whittacre and Starbuck.

*First.*—1st. The extension of the time for payment of the $3,000 note, by the agreement of February 13, 1856, did not discharge or affect the lien of the mortgage. It could be discharged only by payment or release. 1 *Hilliard on Mort.* 307—309, 315, 324, *and cases cited:* 3 *Barb. Ch. Rep.* 293, *Bank, &c., vs. Finch;* 31 *Maine Rep.* 296, *Haddock vs. Bullfinch;* 8 *Pick. Rep.* 522, *Watkins vs. Hill;* 14 *Com. Rep.* 334, *Pond vs. Clark;* 9 *Mass. Rep.* 247, *Davis vs. Maynard.*

2d.—Subsequent encumbrancers stand in no better position than the mortgagor. The lien not being affected as to him by the agreement, he could not by any act of his, such as conveying or encumbering, affect it. 16 *Pick. Rep.* 22, *Pomeroy vs. Rice.*

*Second.*—1st. The Court below erred in applying the payments contrary to the interest and application of the parties. The referee finds that they were made expressly as interest calculated at the rate of two and one half per cent. per month, after as well as before maturity of the note. It is not a ground for the Court to make a different application of them that Fuller was not legally bound to pay that rate after maturity. He had full knowledge of the fact. He could not afterwards recover the money so paid, nor, what would be the same in effect, have them applied upon any other debt. And Defendants can have no better right than Fuller, unless they show some equity peculiar to them, such as that the money was so applied for the purpose of defrauding them.

2d.—The payments were all made before the Banning judgment, and $1,192.50 of them before the Hayes' mortgage was executed.

*Third.*—The Court below erred in postponing Plaintiffs' second mortgage to the title of Emmett.

1st.—There is no issue as to the consideration of the mortgage. The complaint alleges one and the answers all admit it. The referee does not find that there was no consideration. He states that it was given for arrears of interest claimed to be due on the $3,000, but he does not find that there was no

63

interest actually due. On the contrary, it appears that at the date of the mortgage there was interest actually due on the $3,000. Under our then Statute as to interest, forbearance for any time upon any sum actually due would be a sufficient consideration for the mortgage, and if valid against Fuller it would be against his creditors, unless fraud were proved.

2d.—At law the mortgage has precedence of the subsequent judgment of Banning & Co.

No delay in recording the mortgage would affect the priority at law. And the rule in equity is the same unless the judgment creditor shows that he is prejudiced by the delay, as by being thereby led to give credit to the debtor. The credit in this case was given before the mortgage was executed, and the delay in recording did not induce it.

*Fourth.*—The mortgage of Hayes covering property not covered by Plaintiffs' second mortgage they are entitled to insist that she shall first resort for satisfaction of her mortgage to the property not covered by theirs. 1 *Story's Eq. Jur., sec.* 633, *and following sections and cases cited;* 1 *Hilliard on Mort.* 227, 228, *and cases cited.*

Points and authorities of Appellant Hayes:

*First.*—Interest on the Plaintiffs' mortgage as against Hayes (who had no notice of the terms of the mortgage except by the record,) should be calculated at seven per cent., no rate being specified in the mortgage; the recording of the mortgage being essential to the lien as to subsequent incumbrancers who were not bound to notice anything not on record. A mortgage should be recorded in all its parts, and there is no constructive notice of what is not on record. *Fridley vs. Hamilton,* 17 *Serg. & R.* 70; *see Comp. Stats.*

*Second.*—The payments on account in the pleadings must be taken as general, there being no special agreement as to the application of the same averred or proved.

*Third.*—The agreement of Plaintiffs with Fuller, of February 13, 1856, to which Hayes was not privy, essentially changed the old contract, and in fact reformed it, or substituted a new contract in lieu of the old—extending the time and varying the terms—this new contract being subsequent

to the Hayes mortgage must be postponed to it, and the record of the old mortgage no longer represented the real contract then existing, and cannot aid the Plaintiffs. *See authorities on first point.*

*Fourth.*—The decree should be reformed so as to let in the right of redemption, and conform to the principles laid down by the Supreme Court in *Hayward vs. Judd*, 4 *Min.* 483.

*Fifth.*—The second mortgage of Plaintiff being for interest the payments should be deducted from principal. This would make due on November 5, 1856, $1,015.50—interest from November 5, 1856, at seven per cent.

J. & C. D. GILFILLAN, Counsel for Appellants, Whittacre and Starbuck.

H. J. HORN, Counsel for Appellant Hayes.

*By the Court*—ATWATER, J. These are actions by different mortgagees to foreclose separate mortgages given by Fuller at different times, and embracing in the main the same property. In each case the mortgagor, and all incumbrancers of record, other than plaintiffs, are made defendants. In the action in which Hayes is Plaintiff, and which was first commenced, Whittacre and Starbuck interpose their equities and claim by way of answer, and in that afterwards commenced by Whittacre and Starbuck, Hayes sets up her equities in the same manner. The equities and claims of the Defendant, Emmett, who claims as the successor in interest of the mortgagor, and also as purchaser under a judgment against Fuller, are also interposed by answer in each action. The whole merits of the controversy are therefore before the Court in either case. The two cases were referred to a special referee to take the testimony and report the facts, and the report in both cases was the same, and the cases were tried in the Court below, and argued in this Court upon the same state of facts and same record. Both cases may, therefore, properly be considered together, as a decision upon the issues raised in one, must necessarily determine those of the other. As the papers in the case of *Whittacre and Starbuck vs. Ful-*

*ler* were mostly used by the Court in considering the case, where the word Plaintiffs occurs, it will be understood as referring to them. The facts presented by these cases, as reported by the referee, Harvey Officer, Esq., are substantially as follows, viz. :

That on the twenty-fifth day of May, 1854, Alpheus G. Fuller made and executed his promissory note to the Plaintiffs for the sum of three thousand dollars, due in twelve months from date with interest at the rate of two-and-a-half per cent. per month, payable semi-annually. That on the same day, to secure said note, Fuller and wife executed and delivered to the Plaintiffs (Whittacre and Starbuck,) a mortgage upon lots nine and ten, in block fifty-one, in Rice & Irvine's addition to the town of Saint Paul, which mortgage was duly recorded. That said conveyance was conditioned for the payment by said Fuller to the parties of the second part named in said mortgage, of the sum of three thousand dollars, with the interest thereon, according to the conditions of his promissory note, bearing even date with said mortgage.

That on the 13th day of February, 1856, in consideration of the extension of time on said note for one year, the said Fuller agreed to keep the interest then due, for one year, at three per cent. per month, interest payable quarterly, and to pay interest on the principal quarterly, instead of semi-annually, and if not paid when due, to pay five per cent. per month till paid, which agreement was endorsed in writing on the back of the note, expressing the consideration, and signed by the Defendant, Fuller.

That there was paid upon said note, in part payment thereof, the sum of $967.50-100, May 25th, 1855, and the sum of $225, August 28th, 1855. That the payment of May 25th, 1855, was the first payment on the note, and that $900 thereof was interest on the principal, and the $67 was interest on the first semi-annual instalment due on the note, and that the payment of $225, on the 28th day of August, 1855, was paid as interest, and calculated at the rate of two-and-a-half per cent. per month. There was also a payment on the 13th of May, 1856, of $264, paid as interest as follows : On the 13th of February, 1856, there was a balance due of $433, upon

which Fuller agreed to pay three per cent. per month, and the $264 payment was made up by calculating interest at 2½ per cent. per month on the $3,000, and three per cent. per month on the $433 balance. There was also a payment on the 13th of August, 1856, of $264, which payment was made up in the same manner as the payment of May 13th, 1856, and still another payment of $264 on the 5th day of November, 1856, made up in the same way upon similar calculations of interest, and this payment was included in, and made a part of the principal sum mentioned in the promissory note for $1,694.88, hereafter described.

That on the 16th of November, 1857, Whitacre and Starbuck paid the sum of $64.40-100, which had been assessed upon the premises as taxes.

That on the 5th day of November, 1856, the said Alpheus G. Fuller and wife executed and delivered to Plaintiffs, a mortgage on the same premises, to secure his note to them of that date for the sum of $1,694.88, which mortgage was recorded July 28th, 1857.

That on the 24th day of October, 1855, the said Fuller made a promissory note in favor of Harriet S. Hayes for the sum of $1,300, with interest after maturity at five per cent. per month, due one year after date, and on the same day executed a mortgage, to secure said note, on the west part of said lots nine and ten, and certain other property, which mortgage was recorded November third, 1855. That fifty dollars was paid on said note at the maturity thereof.

That on the 6th day of April, 1857, William L. Banning and Wm. Bucknell, by the firm name of Wm. L. Banning & Co., recovered a judgment against Alpheus G. Fuller (with others,) for the sum of $3,156,85, which judgment was founded upon an indebtedness which had accrued to them prior to the 28th day of July, 1856, and was, on the date thereof, duly docketed in the county of Ramsey.

That on the 19th day of September, 1857, the premises mortgaged were sold on execution issued on said judgment, and purchased by Banning & Co., and the Sheriff's certificate delivered to Banning & Co., and also filed with the Register of Deeds.

That the said certificate was afterwards duly assigned by Banning & Co., to Lafayette Emmett, and a Sheriff's deed for the premises, at the expiration of the time of redemption, duly executed to the said Emmett.

That on the 30th day of April, 1858, Alpheus G. Fuller sold the premises to Joseph E. Gay, and on the 15th day of July, 1858, the said Gay sold and transferred the premises to Lafayette Emmett, who entered into possession of the same October 1, 1858, and has ever since continued in possession.

That there was nothing in the mortgage first above described, or in the record thereof, to show that it drew any greater rate of interest than seven per cent. per annum. And the same finding in regard to the mortgage secondly above described. That Banning & Co., at the time of their purchase on the judgment, had no other notice of the said mortgages, nor of the rates of interest in the notes secured by the same than that conveyed by the record.

That the agreement endorsed upon the back of the note, was made without the knowledge or consent of, and without any notice to any of the parties to this action, except the Plaintiffs, and Defendant Fuller, and no record was made of the same.

That the sum of $264, paid on the 5th day of November, 1856, was included in and formed part of the consideration of the said second note for $1,694.88, and that said note was given for arrears of interest, claimed to be due up to November 5th, 1856, and that no part of said note has been paid.

That the delay in recording the mortgage securing said note was unreasonable, and that said Defendants, Hayes and Banning, and their successors in interest, had no notice of the existence of said mortgage, until the same was recorded, and that the same is a lien upon the same premises covered by the mortgage to Whitacre and Starbuck.

The decree entered upon this report adjudged that there was due the Plaintiffs, from Fuller, the sum of $7,010.34, and that the mortgage for $1,699.88 is not a lien on the premises therein described or any part thereof, as against the lien or

interest of either of the Defendants, Hayes or Emmett, but postponed to their claims.

That the mortgage first described is a lien on the premises described in the complaint, as against the Defendants, Hayes and Emmett, for the amount remaining due thereon, after computing interest on $3,000, at the rate of two-and-a-half per cent. per month, from its date to the maturity thereof, and after maturity at the rate of seven per cent. per annum, deducting from the principal and interest so made the payments by Defendant, Fuller, mentioned in the referee's report, at the several times when the same were made, the amount now appearing to be due upon such computation, being $2,844.80. That the Plaintiffs have a lien against all the Defendants for $64.40, amount of taxes paid by them, and interest on same.

The decree then provided for a sale of the premises, and that all parties be barred and foreclosed from all equity of redemption, &c.

All parties appear to have been dissatisfied with this decree, and appeal to this Court to have the same reformed, and their rights adjusted according to the equities of the case.

The mortgage of $3,000 by Fuller to Plaintiffs, of May 25th, 1854, is the first incumbrance upon the premises which the papers disclose, and of course takes precedence of the others to the amount specified in the record. As between the original parties to this mortgage, it is a lien upon the premises to the amount due upon the note which it secures, according to the legal amount of interest secured by said note. But subsequent incumbrancers are bound by nothing more than the record discloses, (unless express notice be proved,) and as the record makes no mention of the rate of interest specified in the note, as to the second mortgagee, the same must be computed at the rate of seven per cent. per annum. *Frost v. Beekman,* 1 *John Ch.,* c. 300; *Shawbhut v. Parrott & Thompson, ante p.* 323. So far at least as Mrs. Hayes is concerned she has the right to insist that the lien of the mortgage shall be no greater than the record discloses, as she appears to be a *bona fide* purchaser for a valuable consideration, and we are not to presume she would have risked her money upon the property,

encumbered to a greater amount than that of which notice was given by the record. Her mortgage bears date the 24th of October, 1855, and was recorded November 3d, 1855, from which date, as to subsequent incumbrancers, her rights commence. The Court below, therefore, erred in holding that the first mortgage was a lien as against Mrs. Hayes for more than $3,000, and interest at seven per cent., after deducting payments. This amount is to be ascertained by computing the interest on the principal up to the time when a payment was made, adding the same to the principal, and deducting the payment from the amount, the balance forming a new principal, on which interest is to be computed in the same manner. The sum of these payments, as alleged and admitted by the pleadings in both actions, is $1,984.50 ; and although the referee finds, as a fact, that the payment of $264, Nov. 5, 1856, was carried into, and formed a part of the consideration of the new note and mortgage, yet I do not see how we can distinguish between that and the other payments. This arrangement for the payment of this sum is binding between the parties, and subsequent purchasers or incumbrancers are certainly in as good a position. That the giving a new note, with larger interest and increased security, was considered as a payment, is affirmed, and still insisted on by Whittacre and Starbuck, by their claim to recover on the new note. If permitted to do this, then it should be endorsed as a payment on the old.

The next transaction between the parties to the original mortgage, which is assailed by subsequent incumbrancers, is the extension of time on the $3,000 note. It is claimed by Mrs. Hayes and L. Emmett, that this extension of time discharged the mortgage. We do not think this position tenable. *Sec.* 37, *p.* 301 *Comp. Stat.* provides how a mortgage shall be discharged, which Statute was in force at the time of the transaction referred to. There is no claim that the mortgage was discharged in the manner provided by Statute, nor by the execution of any instrument of as solemn and binding a character as the mortgage itself. There having been no legal discharge of the mortgage, if any is claimed it must be based upon superior equity of the subsequent incumbrancers over

the original or first mortgagees, or some injury to their rights and interests in the property, sustained by reason of the act complained of.    But the Defendants wholly fail to show that their rights have been injuriously affected by the extension. As between the parties, the arrangement was unobjectionable, was made in good faith, and evidently without any intent to discharge the mortgage, or prejudice the rights of subsequent incumbrancers.    Mrs. Hayes doubtless has the right to insist that her lien on the premises shall not be impaired by any arrangement between the parties to the first mortgage, made subsequent to the execution of hers, without her privity or consent.    As to her, the agreement was simply void, and her mortgage may be enforced, as though no extension had been made.    But in equity she can claim no more.    There is no such relation existing between consecutive incumbrancers, as to avoid a mortgage from such agreement, and it would manifestly be subversive of the principles of justice and equity to give it such effect.    It is laid down in 1 *Hilliard on Mort., p.* 307, that a mortgage being given as security for a *debt*, and not merely for any particular *evidence of debt*, the general rule is, that nothing but actual payment of the debt, or an express release will operate as a discharge of the mortgage. The lien lasts as long as the debt.    And in *The Bank of Utica vs. Finch, et als.*, 3 *John, Ch. R.*, 293, it is held that where the mortgage is given to secure a particular debt, with a condition to be void upon the payment of that debt, the mortgagee does not lose his security by the mere extension of the time of payment.    8 *Pick.*, 522; 9 *Mass.*, 247; 31 *Maine*, 247.

The amount of $64.40, paid by Plaintiffs as taxes, is undisputed, and is a prior lien in favor of the Plaintiffs upon the premises for that amount and interest.

The next incumbrance in order of date, is the second mortgage of Fuller to the Plaintiffs for $1,694.88, date of November 5th, 1856.    The consideration of this mortgage, as found by the referee, was for arrears of interest on the $3,000 mortgage, and it was recorded July 28th, 1857.    In what manner, or at what rate the interest was computed to produce this

64

amount does not appear, but if the payments made by Fuller were made as interest, as found by the referee, at the rates as stated by him, there would only have remained due, as interest, at the date of the mortgage, the sum of $409.44. It is only to this extent, therefore, that we find any consideration for this second mortgage, and this consideration appears to have been an amount found due on the principal of $3,000, February 13, 1856, calculating interest on the same at two-and-a-half per cent. per month. The amount, in fact, then found due by the referee was $433, probably by computing the interest quarterly, although by the terms of the note previous to that date, interest was payable semi-annually. The next incumbrance on the premises, is the judgment of Banning & Co., recovered and docketed April 6th, 1857, from which date it became a lien on the lands described in the complaint. This was previous to the record of the second mortgage from Fuller to the Plaintiffs, that having been recorded July 28th, 1857. The facts reported show no consideration for that mortgage, except for something over the sum of four hundred dollars, as above stated, and that consideration consists of interest not legally chargeable. In other words, the Plaintiffs could not have collected that amount of interest in an action against Fuller, if he had interposed a defence, nor is the obligation on his part rendered more binding by giving his note for the amount, unless it be shown that such note was given and received in payment of the debt. No such evidence appears in the case. The assignee of the judgment is entitled to object that this debt shall not operate as a lien upon the premises, prior to that of the judgment.

There is also another reason why this mortgage should not be held as a prior lien to the judgment on these premises. Previous to the Statute of 1858, a *bona fide* purchaser for a valuable consideration, previous to the docketing of a judgment, was preferred to the lien of the judgment, even though his deed or mortgage was not recorded. But as against all other unrecorded conveyances, the lien of the judgment attaches from the time of docketing thereof. In *Stuart vs. Kissam*, 2 *Barb.* 493, it was held that a party taking a conveyance of real estate in payment of a precedent debt, was

not entitled to protection as a *bona fide* purchaser within the principle of the recording acts, for the reason that he gave no present consideration for the conveyance.    To the same effect is *Dickerson vs. Tillinghast*, 4 *Paige Ch. Rep.* 215, *and* 20 *John.* 637.    The reason why a *bona fide* purchaser for a valuable consideration, whose deed or mortgage was unrecorded, was preferred to the judgment creditor, was on the ground that his claim was one of superior equity, he having parted with a valuable consideration on the faith of the specific property.    But in the case at bar the mortgagee shows no equity superior to that of the judgment creditor, as he parted with nothing on the faith of the property, and took the mortgage only as security for a precedent debt, and it does not appear that he relinquished any personal claim for such debt upon the debtor himself.    Aside from the fact that the consideration of this mortgage was that of a precedent debt, not collectable by law, the circumstances disclosed by the case with reference to it do not exhibit the equities of the Plaintiffs in a peculiarly favorable light.    The consideration named in the mortgage exceeds by more than four times the amount due at the date thereof, even computing the interest on the principal at two and a half and on the interest at three per cent. per month quarterly, and the mortgage was not recorded until nearly nine months after its execution and delivery, while the referee has found as a fact that the delay in recording this second mortgage from the date thereof until the 28th day of July, 1857, was unreasonable, and that Banning & Co. and their successors in interest, had no notice thereof until the same was recorded.    We do not think therefore on any principle that the lien of this second mortgage should be preferred to that of the judgment of Banning & Co. and there was no error in the ruling of the Court below on this point.

We think the Defendant Emmett occupies the same position as Mrs. Hayes with reference to the application of the payments made by Fuller on this mortgage.    That is, he appears from the record to be a *bona fide* purchaser for a valuable consideration, holding not only under the title by Sheriff's deed on the Banning judgment, but also by deed from Fuller's grantee.    Were his title limited to that acquired

under the judgment only, he would possess superior equities to the judgment creditor, as in *Jackson vs. Dubois*, 4 *John.* 221, it was held that the vendee of the Sheriff would be preferred to a prior unregistered mortgage. To the same effect is 4 *Cow.* 499. The referee has found that the payments made by Fuller were made as interest, but the amount far exceeds the interest due upon the note as disclosed by the record. As subsequent incumbrancers are presumed to have acquired their interests with reference to the existing liens on the premises of which they had notice, they are entitled to have payments applied so as to reduce those liens, as they appear of record. Parties by a private arrangement between themselves cannot prejudice the rights of subsequent incumbrancers, although as between themselves the arrangement may be binding.

The decree which was entered upon the report of the referee barred and foreclosed the Defendants, and all persons claiming under them, from all equity of redemption. This part of the decree is erroneous, as under the act of March 10, 1860, the Defendants are entitled to three years after the sale within which to redeem the premises. *Bassett vs. Stone*, 4 *Min.* 298; *Heyward vs. Judd*, 4 *Min.* 483.

As between the Defendants Hayes and Emmett, the latter is entitled to insist that Mrs. Hayes shall make the amount due her out of property, so far as the same is sufficient for that purpose, not covered by Plaintiff's mortgage; or, if she redeems from Plaintiffs without foreclosing her mortgage, the Defendant Emmett is entitled to be subrogated to her rights in her mortgage upon satisfying the amount due by the terms thereof. 1 *Hilliard on Mort.* 308; 1 *Story's Eq. Jur.*, sec. 633.

As a matter of equity the parties in interest have a right to insist that the property shall not be consumed by unnecessary costs and expenses. One sale is sufficient for all purposes, and the proceeds thereof should be applied to extinguish the liens to the extent and in the order herein above determined.

We shall therefore refer this case to the Clerk of this Court (unless the parties to the actions stipulate in writing to refer to some other person within ten days after notice of filing hereof,) to ascertain and report the amount due the mortgagees

respectively, and the amount of the liens, upon the principles here laid down, and shall so order that the property be sold in the action first commenced, that the proceeds of the sale of the property mentioned in the first mortgage be applied first to pay the costs of such sale, and the suit commenced to foreclose the same, and the payment of the first mortgage lien of Whittacre and Starbuck, and the remainder, if any, together with the proceeds of the lands not mentioned in the first mortgage, or so much thereof as may be necessary, be applied in discharge of the second or Hayes' mortgage, and costs of suit, the overplus, if any, to be paid to said Emmett, as the party next in interest—the mortgagees being respectively entitled to judgment against the mortgagor for any amounts remaining due upon their notes, after applying the proceeds of such sale in the manner before stated, computing interest at the rate agreed upon or specified in the note until maturity, and the legal rate thereafter, the payments to be deducted at the dates they were respectively made, as reported by the referee.

NOTE.—The Chief Justice having been a party in the action took no part in the decision.