Order denying motion to vacate order reversed, with $10 costs and disbursements, and motion to vacate order for examination of judgment debtor granted, with $10 costs. All concur.

---

PEOPLE v. MERCHANTS' TRUST CO. et al.

(Supreme Court, Appellate Division, Third Department. November 14, 1906.)

1. BANKS AND BANKING—INSOLVENCY—DISTRIBUTION—PAYMENT OF INTEREST.

Where a trust company was declared insolvent and a receiver appointed, and the assets afterwards proved sufficient to pay all the creditors in full, they were entitled to interest upon balances due, as against the corporation and its stockholders.

2. SAME—DEMAND FOR PAYMENT—NECESSITY.

The appointment of temporary receivers for a trust company and the assumption of possession by the state obviates the necessity of any formal demand on the part of depositors for the payment of their deposits, so as to entitle them to interest.

3. SAME—INTEREST ON DEPOSITS.

Where special contracts for interest were entered into by depositors with a trust company, upon the implied understanding and agreement that the deposits could be withdrawn upon demand, such depositors are entitled to recover interest at the rate provided for in such contracts from the day of the last payment of interest thereon up to and including the day on which the receiver was appointed for the company, and thereafter, upon their respective balances, up to the date of the final payment of principal, at the legal rate of interest.

4. SAME.

Depositors with an insolvent trust company having no interest contracts, are entitled, on the distribution of the estate by a receiver, to interest at the legal rate upon the amount of their respective credit balances, from the date of the appointment of the receiver up to the date of the final payment of principal.

5. SAME.

Holders of certificates of deposit, issued by an insolvent trust company, are entitled to interest specified in their certificates, from the day of the last payment of interest thereon up to and including the day on which the receiver was appointed, and thereafter upon the respective credit balances due to them, up to the day of the final payment of the principal, at the legal rate.

6. SAME.

A depositor with an insolvent trust company is entitled to payment of interest after dissolution only upon the balances which would have been due to him had he accepted the several installments of principal at the time they were respectively paid to creditors by the receivers.

7. SAME.

At the time of the dissolution of a trust company and the appointment of a receiver, there were outstanding certified checks upon the issuance of which the account of the depositor was debited, and interest thereafter was only allowed to him on the books of the company on the balance standing to his credit after the amount of the check had been deducted therefrom. *Held*, that holders of such checks are entitled to interest upon the amount of their credit balances from the date of the appointment of the receiver up to the date of the final payment of principal, at the legal rate.

Appeal from Judgment on Report of Referee.

Action by the people of the state of New York against the Merchants' Trust Company, for the dissolution of defendant and the ap-

pointment of receiver. Jacob L. Phillips and others intervene as stockholders. From an order of distribution, allowing interest on the claims of creditors, defendant and interveners appeal. Affirmed.

The following is the opinion of J. Rider Cady, referee:

"No question of fact has been seriously litigated before me, and the range of the case is narrow. The defendant was a domestic corporation organized under the laws of the state of New York. It possessed and exercised banking and trust company powers and transacted a banking and trust company business. On or about May 23, 1905, this action was brought by the people of the state of New York through the Attorney General, in which the plaintiff demanded judgment that the defendant corporation be dissolved, that the usual distribution of its property and assets be had, and that a receiver be appointed. On that day temporary receivers were appointed, and the state banking department through its proper officers took possession of the assets, property, and deposits of the defendant. The defendant interposed an answer which was verified on June 13, 1905, and subsequently the plaintiff amended its complaint by striking therefrom certain allegations which had been put in issue by the answer. The second subdivision of the amended complaint contained the following allegation: 'That on the 23d day of May, 1905, and prior to the commencement of this action, the defendant was unable to pay its debts.' No answer was interposed to the complaint as amended and at a Special Term held at the city of Hudson, on June 24, 1905, by Mr. Justice A. V. S. Cochrane, a judgment was entered dissolving the defendant and appointing the New York Trust Company and Douglas Robinson its permanent receivers with the usual powers and duties enjoyed and exercised by such officials. The original order appointing the temporary receivers enjoined the defendant from disposing of any of its assets until the further order of the court in the premises, and that injunction was perpetuated by the terms of the final judgment.

"The capital of the corporation was $500,000, and there appears to have been a surplus of $1,000,000. The receivers managed the duties of their trust so wisely and with such celerity that on July 25, 1905, an order was granted by the Special Term at Albany, authorizing them to pay a dividend in the amount of 40 per cent. of the total deposits to the depositors. Again, on or about August 26, 1905, another order was made authorizing the payment by the receivers of a further dividend of 25 per cent. in like manner as the first dividend. Thereafter, and on or about October 7, 1905, an order was granted at Special Term in Columbia county authorizing the receivers to declare and pay a final dividend in the amount of 35 per cent. of the deposits; such being the balance in full due to each of the depositors on account of the principal of their deposits. There is now on hand with the receivers a balance of about $175,000. and the claims existing against this balance are that of the New York Life Insurance Company for payment of rent on account of a lease of the main office at 341 Broadway, the expenses including the commissions of the receivers and their counsel fees, the claims of the depositors for interest, and the rights of the stockholders in such balance as may ultimately remain in the hands of the receivers. It appears to be conceded by all parties that there is a sufficient amount to pay to the depositors such interest as may be due them on their deposits under the law.

"The quesion submitted by the order of the court is whether the depositors are entitled to any interest whatsoever, and, if so, for what periods and at what rates.

"It so seldom happens that a corporation, against which proceedings of this character are instituted, is able to pay its liabilities in full, that there is no adjudicated case, in either the state or federal courts, so far as I have been able to discover, which is a controlling authority upon the question here presented. In considering that question in the absence of such authority, it is well to recall the words of Chief Justice Shaw, in Williams v. American Bank, 4 Metc. (Mass.) 317, 323, that: 'Interest is allowed not only on strict legal grounds where there is a contract for the payment of interest, or by way of legal damages where there is a tortious detention of the debt, but upon considerations of equity and natural justice when a party is entitled to the pay-

ment of money which, owing to various causes, he cannot obtain, * * * and in our own practice interest is, in many cases, allowed upon considerations of equity, not only where the payment of the debt has been prevented by the debtor, but where judgment has necessarily been delayed to await the action of the law.'

"In weighing the claim of the depositors to recover interest, it should be borne in mind that the issue is between the creditors on one hand, and the debtor on the other. The fact that individuals have voluntarily purchased, and now hold, stock of the latter, which happens to be a corporation, does not at all affect the disposition of this question, nor should it confuse the mind as to the rights of the claimant. The stockholders have no rights which the trust company does not possess as a legal entity, and that company by reason of its being a corporation possesses no rights different from or in excess of those of an individual debtor confronted with the just claims of his creditors. The trust company, at the time of the appointment of its temporary receivers, was indebted to its depositors. It held their money, and they have only been repaid funds which had been withheld from them. When, as now, the question of interest is between the creditors as a body on the one side and the debtor corporation upon the other, the situation is very different from that presented when the same issue exists between the several creditors themselves as to the equitable disposition of a fund insufficient to pay them all in full. The former concerns a fund in which the debtor has a residuary right after creditors' claims have been paid in full. In the latter case, he has no interest in the fund whatsoever, and the only query concerns its equitable distribution among claimants who cannot receive full payment.

"To the present case, which comes under the former classification, I think the principle announced in the Williams Case, supra, applies. There a decedent's estate was represented as insolvent, and commissioners were appointed; but subsequently certain claims against the estate for which other parties were jointly liable were paid by such parties, so that the assets of the estate exceeded the eventual liabilities against it. Upon those facts Chief Justice Shaw said: 'At the moment of the man's decease his affairs are brought to a close. He can neither contract nor execute contracts, acquire or alienate property, pay or receive money. As his affairs then stand, so they must remain, and be adjusted with reference to the grounds on which they then stood, although months and years elapse before they can be liquidated and the result declared and carried into effect. If it were possible that all the assets could be collected and all the debts ascertained on the day of his death, the true rule would be that all the creditors should be paid the amount of the debts then due them, if the assets were sufficient; otherwise to divide those assets among them in proportion to those debts. * * * It is, however, perfectly manifest that an estate cannot be so settled. But all the delay which occurs after that time is in effect a delay necessarily incident to the liquidation and settlement of the estate, and there is no reason in principle why the loss occasioned thereby should be borne by a creditor whose claim did not happen to bear interest before the death of the debtor, and not by one whose debt was in terms bearing interest. They are entitled to share in the common fund in proportion to the amounts due them, respectively, at the decease of the debtor, and they are delayed in receiving their dues by grounds for which one is no more responsible than the other, and which neither could remove by any diligence. It appears to us, therefore, that it makes no difference whatever whether the debts were on interest or not prior to the death of the debtor, and whether the time of his death, or of the report or of the decree of distribution be assumed, interest is to be applied on all, or to be computed on all. As between the creditors who have paid the full consideration for the amount due to them, * * * and legatees or heirs who are volunteers, we think the former have a claim to be paid their interest, which is an incident to the debt, and without which their debts are not paid in full, before those legatees or heirs can claim anything.'

"The principle, in my opinion, is applicable to the present situation. By the decree of dissolution and the appointment of receivers the trust company ceased to exist. It could neither contract nor execute contracts. It could not carry on business. Its corporate life had ended, and the receivers were required to pay from the assets the full amount of its debts, which included in-

terest thereon at the legal rate from the time when the court took possession. It is true that this decision works something of a hardship to the stockholders who are entitled to share in the ultimate surplus, for while the corporation is compelled to pay interest upon its debts, during the period that the receivers had control, it could not during that period carry on its corporate business, and therefore could not earn money, and the payment of interest depletes to an extent the fund which is ultimately to be distributed among the stockholders. But the situation which exists was brought about by the corporation itself. It became insolvent. That condition was not the fault of the depositors, and they should not suffer a diminution of their full claims, while the corporation possesses sufficient assets to pay them. While the corporation was in the hands of the receivers, the depositors' money was withheld from them. They were unable to obtain it, and for this detention they should have compensation in the way of interest.

"Nor is this decision in conflict with any reported case which I have discovered. The stockholders cite Thomas v. Western Car Company, 149 U. S. 95, 13 Sup. Ct. 824, 37 L. Ed. 663, as holding a contrary doctrine; but with their contention I cannot agree. That was an appeal to the United States Supreme Court in a proceeding to foreclose a mortgage executed by the Peoria & Rock Island Railroad Company. The Western Car Company intervened after the appointment of a receiver of the railroad, and asserted that at the time of his appointment the railroad company was indebted to it for the rental of certain of its cars which the railroad had hired and used. By an amended petition the car company claimed an additional sum to be due it for car rentals after the receivers had taken possession of the road. In the long and complicated proceedings many important questions were presented to the United States Supreme Court for decision; the matter of interest occupying comparatively little of the attention of the court, judging from its opinion, as all that is said upon that subject is found in the final paragraphs of the opinion (page 116 of 149 U. S., and page 833 of 13 Sup. Ct. [37 L. Ed. 663]), where it is said: 'We cannot agree that a penalty in the name of interest should be inflicted upon the owners of the mortgage lien for resisting claims which we have disallowed. As a general rule, after property of an insolvent passes into the hands of a receiver or of an assignee in insolvency, interest is not allowed on the claim against the fund. The delay in distribution is the act of the law. It is a necessary incident to the settlement of the estate. Williams v. Am. Bank, 4 Metc. (Mass.) 317, 323; Thomas v. Minot, 10 Gray (Mass.) 263. We see no reason for departing from this rule in a case like the present, where such a claim would be paid out of moneys that fall far short of paying the mortgage debt.'

"In view of the last sentence quoted, it seems clear that the United States Supreme Court limited its remarks upon the subject of interest to a case where the assets were not sufficient to discharge the liabilities in full, and did not intend to apply them to a case like the present one. As said in Crane v. Bennett, 177 N. Y. 106, 69 N. E. 274, quoting from Colonial City Trust Co. v. Kingston City Ry., 154 N. Y. 493, 495, 48 N. E. 900, 901: 'If, as sometimes happens, broader statements were made by way of argument or otherwise than were essential to the decision of the questions presented, they are the dicta of the writer of the opinion, and not the decision of the court.' My opinion that it was the intention of the Supreme Court to limit its remarks as above suggested is strengthened by the fact that one of the authorities upon which the court bases its decision is the Williams Case, supra, and, as I have already pointed out, that decision expressly holds that a debtor is entitled to interest when the assets are sufficient to pay all the debts in full.

"The other authority upon which the United States Supreme Court bases its decision in the Car Company Case is Thomas v. Minot, 10 Gray (Mass.) 263, which, as I read it, does not sustain the contention of the stockholders. It merely holds, as stated in the headnote, that 'under St. 1838, c. 163, § 121, where a partnership and its partners are in insolvency under one commission, and the separate estate of one partner is more than enough to pay his separate debts, the surplus of that estate over those debts is to be added to the partnership estate and applied to the payment of the joint debts before paying interest on the separate debts.' Chief Justice Shaw also delivered the opinion

in this case, and in the course thereof he said (page 268): 'If there is a surplus as to both classes of creditors, then, before paying back that surplus to the debtor, as the creditors have a superior equity against him, that surplus would be applied in the same way, the interest accruing from the separate assets to the payment of the interest of the separate creditors from whose assets it arose; and that from the joint assets to the payment of the interest of the joint creditors.'

"In Bowman v. Wilson (C. C.) 12 Fed. 864, the remarks of the court on the subject of interest were evidently limited to a case where the assets were insufficient to pay the debts, for the learned judge says: 'I know of no principle of law or equity upon which the interest claimed can be allowed at the expense of the general unsecured creditors who are certainly in no wise responsible for the delay in making the final order of distribution.' The expressions in Grand Trunk Ry. v. Central Vt. Ry. (C. C.) 91 Fed. 569, are also to be read subject to the same limitation, for one of the grounds upon which the court there refused to allow interest was that 'the requirement of payment would, as to bondholders, be inequitable.' This case also bases its decision principally upon the authority of Thomas v. Western Car Co., supra, which, as already indicated, has in my judgment no application to the present state of facts.

"The conclusion at which I have arrived is in accord with the decisions in our own state as I read them. Thus, in People v. American Loan & Trust Co., 172 N. Y. 371, 65 N. E. 200, it is said: 'While interest is allowed as against the corporation itself or its stockholders, if the assets are sufficient for the purpose, as between preferred and unpreferred creditors no interest is allowed after the law takes charge through the appointment of a receiver. * * * If the assets are sufficient to pay all, including interest, it must be paid, for, as against the corporation itself. interest should be allowed before the return of any surplus to the stockholders.' It must be admitted that the remarks quoted are but the dicta of the judge writing the opinion, as there were not sufficient assets in that case to pay the liabilities; but the language indicates that the courts of this state will adopt the distinction which I have pointed out. And this was also the opinion of the Appellate Division of the First Department, when the last cited case was before it (People v. Am. Trust Co., 70 App. Div. 579, at page 584, 75 N. Y. Supp. 563, at page 566), for Mr. Justice Patterson then said: 'As we regard the rights of these preferred creditors they are not entitled to interest at all in the situation of this fund until all the other creditors are fully satisfied.'

"In Parker v. Adams, 38 Misc. Rep. 325, 77 N. Y. Supp. 861, it was held by Mr. Justice Fitzgerald that (headnote): 'Payment to a depositor of an insolvent state bank in the hands of a receiver, by various dividends of the full amount due at the time of its closing, for the deposit and contractual interest thereon, does not relieve a stockholder from proportionate individual liability to the extent of the amount of his stock at the par value thereof, to the depositor for interest upon the unpaid balances of this sum from the time of the closing of the bank down to the time of the payment of the last dividend.'

"In Richmond v. Irons, 121 U. S. 64, 7 Sup. Ct. 788, 30 L. Ed. 864, in considering the question 'whether interest upon the debts of the bank should be allowed as against the stockholders from the date of the suspension,' the court said: 'As the liability of the shareholder is for the contracts, debts, and engagements of the bank, we see no reason to deny to the creditor as against the shareholder the same right to recover interest which, according to the nature of the contract or debt, would exist as against the bank itself, of course, not in excess of the maximum liability as fixed by the statutes. In the case of book accounts in favor of the depositors, which was the nature of the claim in this case, interest would begin to accrue as against the bank from the date of its suspension.'

"In the case of Sickles v. Herold, 149 N. Y. 332, 43 N. E. 852, it also seems to be conceded that depositors of an insolvent bank have the right to recover interest on their deposits from the time of the suspension of the bank, though the question was not directly passed upon, for the court held that 'insolvency' had there been 'neither admitted nor proven,' and Judge Haight said: 'The deposit standing to the credit of the defendant did not draw interest, and such

deposit did not become due until demand, unless circumstances arose which rendered a demand unnecessary, such as the actual insolvency of the bank or its refusal to pay. * * * In case it should turn out that the bank was solvent, and that the superintendent improperly took possession, it might be inequitable to impose upon the stockholders the liability to pay interest upon all of the deposits.' In that action the defendant, a depositor, had served an answer 'asking to have the amount of deposit standing to his credit applied as a set-off' to the claim of the plaintiff, who sued as receiver of the bank to recover upon a note which it held and upon which defendant was liable. The court held that the serving of the answer should be treated as a demand by the defendant for the payment of his deposit, and 'that he should be allowed interest thereon from that date.'

"In Mahoney v. Bernhard, 45 App. Div. 499, 63 N. Y. Supp. 642, affirmed on opinion below 169 N. Y. 589, 62 N. E. 1097, Mr. Justice Barrett, writing for the Appellate Division of the First Department, said: 'Interest upon these contracts, debts, and engagements runs until their total amount is ascertained and liquidated, and the ratable apportionment thereupon made. This interest thus helps to make up the total sum to be apportioned, and the stockholder's liability is for his share of this total sum to the extent of the amount of his stock at its par value.'

"In Barnes v. Arnold, 23 Misc. Rep. 198, 51 N. Y. Supp. 1109, affirmed 45 App. Div. 314, 61 N. Y. Supp. 85, affirmed 169 N. Y. 611, 62 N. E. 1093, Mr. Justice Laughlin said: 'The depositors and other creditors whose claims were due on demand are entitled to interest on their respective claims from the 5th day of October, 1893, the time when the bank became insolvent, closed its doors, and suspended payment.'

"In Wheeler v. Millar, 90 N. Y. 362, it was said, in an action to enforce the statutory liability of a stockholder: 'That the personal liability of the stockholder for the payment of the debt is immediate and absolute the moment the debt is contracted or incurred by the company. The creditor's debt consists both of principal and interest. He is just as much entitled to the latter as to the former, and the liability to pay the debt must necessarily include the accrued interest up to the statutory limit.'

"I am therefore of the opinion, and I hold for the purposes of this case, that the depositors of the defendant are entitled to interest upon their deposits according to the principles which I shall hereafter lay down.

"It appears from the testimony that certain of the depositors made deposits without any provision for interest thereon. It also appears that others of the depositors had special contracts by which the amount of interest upon their deposits was regulated and fixed. The defendant corporation had two offices, one known as its main office, and the other known as the Columbus Circle Branch, all under the same general management but conducted with some difference of details of operation. In the main office no interest was allowed on deposits unless a special agreement was made between the depositor and the defendant. In the Columbus Circle Branch, interest at 2½ per cent. was allowed to depositors in what was known as the 'Home Savings Banks,' which latter were small, iron depositories, which, upon the deposit with the defendant of $1, were delivered to the depositors. The specific testimony upon this subject, as given by the witness Benjamin J. Schrebe, is as follows:

"'Q. In what way did you keep the accounts of these Home Savings Banks, so called? A. They were kept in a separate ledger.

"'Q. What were those banks? A. A little iron safe.

"'Q. Which were sent out to the depositor? A. Yes, upon a deposit of $1, which was placed to that credit to be surrendered when the bank was returned.

"'Q. What interest did you allow in deposits in the Home Savings Banks? A. 2½ per cent.

"'Q. Was there any limit on the amount before interest was payable? A. No, excepting $1.

"'Q. Are you familiar with what rates of interest were paid on the accounts in the main office, 346 Broadway? A. Yes.

"'Q. What were those rates? A. They ranged from 2 to 4 per cent.

"'Q. Did they depend on special agreement? A. Yes.

" 'Q. Do your ledgers show the rates of interest as they were agreed upon? A. Yes, the home office ledgers do.

" 'The Columbus Circle Branch—how were the rates of interest payable to depositors fixed in that branch? A. 2 per cent. was the regular rate, except where there were special agreements and those were exceptional.

" 'Q. Do the books of that branch show the rates of interest payable? A. They should show only the exceptions.

" 'Q. Where there is no entry in the books of the Columbus Circle Branch, 2 per cent. was payable? A. Yes.

" 'Q. Was there any limit on the amount to be kept on deposit in the main office before interest was payable? A. Yes, $500.

" 'Q. Do I understand that no interest was payable on any amounts less than $500? A. There were a few exceptions, perhaps 10 or 20.

" 'Q. Is there any note in the ledger by which they may be distinguished from others? A. Yes. * * *

" 'Q. Was there any limit as to the amount to be kept on deposit in the Columbus Circle Branch to entitle it to interest? A. I think they paid on as low as $5.'

"The depositors who had special agreements with the defendant, including the holders of Home Savings Banks for the allowance of interest upon their deposits, are entitled to interest according to the terms of those agreements from the last interest day preceding dissolution, which was January 1, 1905, up to the 23d day of May, 1905, which was the date on which the state banking authorities assumed possession of the property, assets, and deposits of defendant and on which the temporary receivers were appointed. All depositors, including those who had special interest agreements, are entitled to interest upon their unpaid balances at the legal rate of 6 per cent. from said 23d day of May, 1905, to the date of the final payment of principal by the permanent receivers.

"This conclusion is based upon the following reasons: The special contracts for interest were entered into by the depositor with the defendant upon the implied understanding and agreement that the deposits could be withdrawn upon demand. This fact, coupled with the other fact that the defendant would care for the deposit during the interim, afforded a sufficient consideration for the acceptance by the depositors of less than the legal rate of interest. While this condition existed, the depositors were entitled only to the contract rate of interest. When, however, the right of withdrawal and payment upon demand was taken away from the depositor by the default of the defendant, owing to its conceded inability to pay its debts, a breach of that contract occurred, and the conditions under which it was made were terminated. Thereupon a right on behalf of the depositors to compensation for the withholding of his money arose, and the measure of that compensation was the legal rate of interest established by the Legislature of the state. The final judgment of dissolution and the appointment of permanent receivers related back, in law, to the day when the temporary receivers were appointed, when the state took possession of the assets and deposits of the defendant, and when it defaulted in its contract obligations. People v. Am. Loan & Trust Co., 172 N. Y. 371, 65 N. E. 200; People v. Commercial Alliance, 154 N. Y. 95, 96, 47 N. E. 968; People v. Life & Reserve Ass'n of Buffalo, 150 N. Y. 94, 45 N. E. 8; In re Equitable Reserve Fund Life Ass'n, 131 N. Y. 354, 30 N. E. 114.

"The appointment of the temporary receivers and the assumption of possession by the state obviated the necessity for any formal demand upon the part of depositors for the payment of their deposits. Richmond v. Irons, 121 U. S. 27, 64, 7 Sup. Ct. 788, 30 L. Ed. 864; Parker v. Adams, 38 Misc. Rep. 325, 77 N. Y. Supp. 861; Sickles v. Herold, 149 N. Y. 332, 43 N. E. 852. The futility of such a formality is shown by the explicit testimony of Mr. Glaze, who, on the day of the suspension of the company, May 23, 1905, made a demand for the amount of the credit balance due on the deposits of his firm and for the credit balance due on the individual deposits of his partner, Mr. Kneeland, from Mr. Judson, the state bank examiner who had taken charge of the defendant, from its paying teller at the paying teller's window and from its secretary, only to have such demand in turn refused. To hold under such circumstances that an actual, formal demand was requisite in order to set the

right to legal interest running, would be to hold an absurdity in law and in fact.

"There are authorities cited upon the briefs of counsel for the stockholders to the general effect that the contract rate of interest prevails up to the time of a judgment for the amount due (Miller v. Burroughs, 4 Johns. Ch. 436; Van Beuren v. Van Gaasbeck, 4 Cow. 496; Andrews v. Keeler, 19 Hun, 87; Association v. Eagleson, 60 How. Prac. 9), but I do not regard those authorities as in conflict with the position above assumed. The rights and obligations of the parties to the deposit contracts were fixed and determined as of the day when the temporary receivers were appointed and the state took possession, and, as already indicated, the final judgment related back to that day.

"There are two classes of creditors of the defendant which have not thus far been alluded to.

"On May 23, 1905, there were outstanding certain certificates of deposit which had been issued to creditors making the deposits represented by the certificates, respectively. At the date of taking the testimony upon this reference there was one of these certificates outstanding held by A. J. Kantrowitz in the amount of $500. Mr. Kantrowitz, although notified upon several occasions to present his certificate, failed to do so. So far as the holders of these certificates, including Mr. Kantrowitz, are concerned, I hold that they are to be governed by the same rules which have been applied to the other depositors—that they are entitled to interest according to the terms of the certificates held by them, respectively, up to May 23, 1905, and thereafter at the legal rate of interest upon their respective balances up to the time of the final payment of principal by the receivers. Mr. Kantrowitz is entitled to payment of interest after dissolution only upon the balances which would have been due to him had he accepted the several installments of principal at the time they were respectively paid to creditors by the receivers.

"On May 23, 1905, there were outstanding five certified checks made by the defendant at the branch office and ten certified checks at the home office. Upon the issuance of each certified check the account of the depositor was debited with the amount of the check, and interest thereafter was only allowed to him on the books of the company on the balance standing to his credit after the amount of the check had been deducted therefrom. The holders of certified checks were paid in the same manner as depositors by dividends of 40, 25, and 35 per cent., respectively, pursuant to the orders of the court. Each of the holders of those certified checks is therefore entitled to interest upon the unpaid balances thereon from May 23, 1905, to the date of the final payment of principal.

"The case appears to be one of first impression in this state, and that fact will perhaps serve to excuse the length of this opinion, which might otherwise have been considerably abbreviated. The conclusion which I have reached is that which seems upon reflection to be the most salutary for a great commercial community like the state of New York. To summarize my conclusion, it is my opinion:

"First. That depositors having special interest contracts with the defendant are entitled to recover from it, in addition to the amounts already paid to them, respectively, interest at the rate provided for in said contracts, respectively, from January 1, 1905, to and including May 23, 1905, and thereafter upon their respective balances up to the date of the final payment of principal, at the legal rate of interest.

"Second. Depositors having no interest contracts with the defendant are entitled to recover from it interest upon the amount of their respective credit balances from May 23, 1905, up to the date of the final payment of principal at the legal rate of interest.

"Third. Holders of certificates of deposit are entitled to recover from the defendant the amount of interest, if any, specified in their respective certificates from the day of the last payment of interest thereon up to and including May 23, 1905, at the rate specified in their respective certificates and thereafter upon the respective credit balances due to them up to the date of the final payment of principal at the legal rate of interest.

"Fourth. Holders of certified checks are entitled, respectively, to interest

upon the amount of their respective credit balances from May 23, 1905, up to the date of the final payment of principal at the legal rate of interest.

"Fifth. In determining the amount of the respective credit balances above mentioned upon which interest is hereby allowed after the dissolution of the defendant, the following formula or rule is to be applied: Interest is to be allowed on the full amount of the respective credit balances shown by the books of the corporation from May 23, 1905, to the date of the payment of the first installment of principal amounting to 40 per cent. thereof, authorized by order of July 25, 1905, which payment is then to be deducted from the said credit balance, and interest is to be allowed thereafter upon the remainder to the date of the payment of the second installment of principal amounting to 25 per cent. thereof authorized by the order of August 26, 1905, which payment is in turn to be deducted from the last-mentioned balance, and interest is to be allowed thereafter upon the remainder to the date of the final payment of principal amounting to 35 per cent. thereof authorized by the order of October 7, 1905."

Argued before PARKER, P. J., and SMITH, CHESTER, KELLOGG, and COCHRANE, JJ.

Julius M. Mayer, Atty. Gen., for the People.

Louis Marshall, Laurence Arnold Tanzer and Abraham Benedict, for appellants.

Joab H. Banton and James I. Moore, for respondents intervening creditors. Theodore Sutro, Boardman Wright and Ralph Barnett, for respondent Penderson.

Edward Lauterbach, for receiver.

PER CURIAM. Order appealed from affirmed, with $10 costs and disbursements, upon the opinion of J. Rider Cady, referee.

---

ULSTER COUNTY SAVINGS INSTITUTION v. DEYO et al.

(Supreme Court, Appellate Division, Third Department. November 14, 1906.)

LIMITATION OF ACTIONS—ACKNOWLEDGMENT OF DEBT—PAYMENT OF INTEREST—EFFECT ON SURETY.

A treasurer of a corporation, who was surety on its note, made semi-annual payments of interest on the note by sending checks of the firm of which he was a member, accompanied by letters signed individually, and reading, "Inclosed find check of" the firm, "to pay interest on mortgage of" the corporation. The receipts returned read, "Received from" the corporation, without mentioning the surety. The treasurer of the creditor corporation did not know that the person sending the money was the treasurer of the debtor corporation, nor that he was liable on the note. The receipts were according to the form and custom of the treasurer. *Held* to show a payment by the corporation rather than a payment constituting a recognition of the debt, and an implied promise to pay by the surety, necessary to toll the statute.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 33, Limitation of Actions, §§ 623–630.]

Kellogg, J., dissenting.

Appeal from Special Term, Ulster County.

Action by the Ulster County Savings Institution against Philip Deyo and another, as personal representatives of Solomon Deyo, deceased. From a judgment in favor of defendants, plaintiff appeals. Affirmed.