Burks, J.,
delivered the opinion of the court.
Contribution among sureties is founded in natural justice and the equitable principle of equality of burden and benefit. If one of a number of sureties discharge the common burden, the others are bound to contribute equally to his relief, in the event of the insolvency of the principal; and if any of them are insolvent, their shares must be apportioned among those that are solvent. These principles are well settled. Preston v. Preston and others, 4 Gratt. 88; Wayland v. Tucker and others, id. 267; 1 Story’s Eq. Juris. §§493, 495; Dering v. Earl of Winchelsea, 1 Lead. Cas. Eq. and notes (4th ed.), 120 (top p.)
There were six sureties upon the official bond of Lilburn H. Trigg as collector of customs for the district of Richmond, and if they were all solvent, and James Galt and the appellant (Robertson) have shown themselves entitled to contribution at all, the estate of Daniel Trigg, one of the sureties, would be bound to contribute to Galt and Robertson one-sixth part of whatever sum was paid by them to the United States for their common principal, with interest thereon from the date of such payment. But it is very clear from the evidence that two of the sureties — namely, Henry L. Brooke and Charles Bell Gibson—were, at the time the payment was made and ever afterwards, utterly insolvent, and have never contributed anything to reimburse Galt and Robertson for the amount paid by them. The only witness examiued touching the solvency of Brooke and Gibson describes them as being in the most straitened circumstances, and as “living from hand to. mouth”; further testifying, that he was very familiar with all the circumstances attending the execution of the bond of Trigg as collector, and that he always regarded the names of Brooke and Gibson “as mere make-weights.” No countervailing testimony was taken. If any witness. *80 could have been found who would have sworn to the solvency of these men, or who would have said that it was doubtful, it is fair to presume that he would have been produced and examined in the cause,
When the accounts, ordered by the court, were being ^a^enj> Robertson furnished to the commissioner a statement made out by Galt, showing the net amount paid by them to the United States on account of the default of the •collector, to which statement there was subjoined a written ■memorandum, signed by them and dated July 30, 1855, in the following words : “Of this ($14,791.48, the nett .amount claimed in the statement), C. F. T. (admitted to be Connelly F. Trigg, one of the sureties on the bond) has paid one-fourth part, and we expect another one-fourth part to be paid out of Dr. Trigg’s estate, or by his heirs; .but the administrator, seeming not to feel authorized, and referring the matter to the court, we now claim contribu.tion from Dr. Trigg’s estate, of what it is legally liable for, of the amount paid by us. We suppose our legal • claim is limited to one-sixth, $2,465.24, with interest from 14th April, 1853.” This paper is relied upon by the • counsel for some of the appellees, as showing an admission by Galt and Robertson, that they were entitled to re•ceiye from Daniel Trigg’s estate only one-sixth part of the amount paid by them to the United States.
This is not, we think, a fair construction of this paper. They evidently mean to claim all they are legally ■entitled to receive, and they “ suppose” their “ legal claim is limited to one sixth,” &c. At most, this language only shows inadvertence, or mistake in a matter of law. It does not amount to an estoppel. Ko one has been misled by it to his prejudice. Although they may have supposed and so stated, that they were legally entitled to receive from Dr. Trigg’s estate only one-sixth part •of the money paid by them, yet if they were really entitled to have one-fourth of that sum instead of one-sixth^ *81 'they are not precluded by anything in that paper from receiving the one-fourth. They certainly never intended to release or abandon any right they had. Indeed, in that very paper, they say, that they “expect another one-fourth to be paid out of Dr. Trigg’s estate” ; and such is their claim, asserted as well in their cross-bill as in their answer to the original bill filed by Trigg’s administrator.
So it seems to us very clear, both on the law and the facts? that if Galt and Robertson are entitled to contribution at all, the share to be contributed by Daniel Trigg’s estate is one-fourth instead of one-sixth, as determined by the decree of the circuit court, and that said decree in that re-, spect and to that extent, is erroneous.
But it is contended by the counsel for some of the appellees, who are creditors of Daniel Trigg, that Galt and Robinson have not shown themselves entitled to contribution from any of their co-sureties; that the alleged default of the collector and his insolvency, and the payment on account of said default claimed by Robertson- and Galt to have been made by them, are not established by the evidence; and that even if such default and payment were •established, Galt and Robertson are not entitled to the priority over other creditors of Daniel Trigg accorded to them by the decree of the circuit court.
If we look alone to the accounts of the collector, as stated by the accounting officers of the treasury department, certified transcripts of which are filed by the appellees as evidence in the cause, no default is made apparent. But these settlements by and with the collector were wholly ex parte in relation to the sureties. They certainly -are not conclusive in a controversy among the sureties and their creditors. At most, they can only be accorded the force and weight due to prima facie evidence. United Slates v. Eckford’s ex’ors, 1 Howard, 250, 263; U. States v. Boyd, 5 How. U. S. R. 29. This is all the weight they *82 wou^ be entitled to in a suit on the bond against the sureties. A fortiori, they can receive no greater consideration a controversy between the sureties. Their effect may be, and, we think, has been overcome by other competent evidence adduced by the appellant.
bt is proved by the witness John H. Bosher, that in April, 1853, in company with Galt, he examined the accounts of Lilburn H. Trigg, and, upon such examination, he found that Trigg was indebted to the United States, as collector and depositary, in the sum of about $24,600; that Trigg admitted that amount as the correct balance against him, and that he was unable to pay it. It was further proved by another witness, George H. Tompkins, Ihe collector’s clerk, that Trigg was then insolvent and so continued as long as he lived. The proof is positive and not contradicted, that as soon as this large balance was ascertained to be owing by Trigg, and that he was insolvent and unable to pay it, the whole amount was paid, a portion by Trigg’s friends, and the residue by Galt and Robertson, his sureties. The amount paid by Galt and Robertson was placed in the custody of William H. McFarland, then president of the Farmers Bank of Virginia, who put it in -the vault of said bank and kept it there until Lynch, Trigg’s successor in office, qualified, when it was paid over to him.
This proof clearly establishes the default and insolvency of Trigg, and the payment by Galt and Robertson. It is immaterial whether Trigg’s successor, Lynch, to whom the money was paid, had authority to receive it or not, if he accounted for it to the United States. He must have so accounted and paid over the money to the United States, as no action on the collector’s bond or other legal proceeding was ever instituted, as far as appears, to recover the balance due from Trigg. Indeed, the transcripts from the treasury department show, that the government received all it was entitled to, by whomsoever paid. It is *83 certain that Trigg did not pay that large balance; for it is shown that he was insolvent and. confessedly unable to pay it. It must, therefore, have been paid by other persons, • and the evidence leaves no room to doubt who those persons were.
Trigg was required by law to render his accounts quarter-yearly to the proper accounting officers of the treasury within three months, at least, after the expiration of each successive quarter. 1 Bright Dig. of Laws U. S. 16, §3. He could therefore have rendered his accounts for the quarter ending on the 31st day of March, 1853, at any time within three months after that date. The account rendered by him for that quarter, as shown by the transcript, bears date April 6,1853. His accounts appear to have been audited in the treasury department in July, 1853. He is debited in the audited accounts with $24,-577.86 for duties on merchandize from the 1st January to 31st March, 1853, and is credited by amount of warrant in favor of the treasurer of the United States, No. 224 (deposit), dated 31st of March, 1853, §24,639.57. This is near the amount of the balance which the witness Bosher ascertained in April, 1853, from an examination of Trigg’s accounts in his office, and from Trigg’s own admission, to be owing by him to the United States, which, he said, he was unable to pay. In his account rendered to the department, which has been already referi’ed to, he credits the United States with the aggregate amount of $24,639.57, and debits the same amount in his hands as depositary. It would thus seem that at the date of the rendition of this account, April, 1853, he had not paid into the treasury the balance in his hands, although the warrant before referred to in favor of the treasurer is dated 31st March. The actual settlement of his accounts was, no doubt, made at some subsequent period, and the warrant dated back to the end of the last quarter, when the balance appeared to be owing. He had a strong motive so-to ad *84 just and arrange his accounts and settlements with the government as not to disclose on the face of the papers any delinquency or breach of official duty.
There is some discrepancy in dates in the descriptions of the official bond under which Trigg was discharging the duties of collector when his default occurred. In the accounts rendered by him, he describes the bond as dated June 14th, 1849. In some of the accounts audited by the department, the bond is described as dated June 14th, 1849, and in others October 1st, 1850; while the bond, a •copy of which is filed by the appellant, and the only copy ■of any bond which is filed, purports to be dated 27th day ■of September, 1850. Whether there were really more bonds than one, or whether the apparent discrepancies are the result of mistake or inadvertence, we have no means of determining with certainty. If there were others, however, besides the one relied on by the appellant, those of the appellees who are contesting the appellant’s claim, when they were procuring transcripts of the accounts, might and probably would have obtained copies of those bonds, and exhibited them as proofs in the record. It is affirmed by the counsel for the appellant that the bond—a copy of which is filed—is the only one ever given by Trigg during his term of office. Such, we think, is the fair presumption from the circumstances. The condition of that bond, which is in the form prescribed by stalute, is certainly sufficient io bind the sureties for any default of the ■collector occurring subsequently and during the term of his office. 1 Howard, supra. If that bond has been superseded by another, it devolved upon the contesting appellees to show it. They have not done so.
The defalcation and insolvency of Trigg, and the payment on account thereof by Galt and Robertson, two of ■the sureties, bound by their obligation to answer for the •default of their principal, being established, it is insisted, nevertheless, that these two sureties are not entitled to the priority given them by the decree of January 17, 1876.
*85 Under the statutes, both of the United States and of this state, if the estate of a deceased debtor in the hands of his personal representative is insufficient to pay all the' debts of the decedent, the debts owing to the United States shall be first satisfied. 1 Brightly’s Dig. of Laws, 17, § 10; Id. 381, § 265 ; Rev. Stat. U. S. (1st ed.), 691, §3466 ; Code (Va.), 1873, ch. 126, § 25.
Daniel Trigg being dead at the time of Lilburn H. Trigg’s default, and his estate in the hands of his administrator being insufficient to pay all his debts, the United States were entitled to priority of payment out of his estate, of the debt for which he was bound as surety of Lilburn BL Trigg, and the said debt having been paid to the United States by Galt and Robertson, his co-sureties, they are permitted, on the principle of subrogation, to stand in the shoes of the United States and to recover and receive from the estate of said decedent what the United States would have been entitled to receive therefrom, if the payment aforesaid had not been made by Galt and Robertson.
That the surety has this right of substitution against the estate of his principal, where payment of a preferred debt has been made by such surety after the death of the principal, would seem to be settled in Virginia by the decisions of this court, although the rule seems to be otherwise in England. See Powell’s ex’ors v. While and others, 11 Leigh, 309, and the cases referred to by Judge Tucker in his opinion, especially the case of Enders v. Brune, 4: Rand. 438. For the general doctrine, see Dering v. Earl of Winchelsea, and notes, 1 Lead. Cases Eq. (4th ed.), top p. 138, et seq.
The rule of substitution, for the purpose of enforcing contribution among co-sureties, is not different. One surety who pays the common debt is entitled to be subrogated to all the rights and remedies of the creditor, as against his co-sureties, in precisely the same manner as *86 against the principal debtor. 1 Lead. Cas. Eq. (ed.), top p. 170; Horton v. Bond, 28 Gratt. 815, 825; Lidderdale v. Robinson, 2 Brock. 159; S. C. 12 Wheat. R. 594.
The statute of the United States provides substitution for the surety against the estate of his principal, where the surety has paid the debt as to which the statute gives the United States priority of right to satisfaction. 1 Bright. Dig. of Laws, 382, § 266; Rev. Stat. of U. S. (1st ed.), 691, § 3468 : and it is argued, that because the same statute makes no express provision for substitution of a surety to the rights of the creditor against a co-surety, it was intended to exclude such substitution on the principle, expressio unius est exelusio -alterius.
We are not prepared to say, that the remedy provided by the statute for the surety against his principal would not have existed under the general rules of equity as administered in the Federal courts, independently of any statutory provision. Whether that be so or not, the rule of substitution, for the purpose of enforcing contribution between sureties, is too well established in equity jurisprudence to be set aside by implication of less force than an express statutory denial of the remedy.
This disposes of the questions arising upon the appellant’s first assignment of error.
The circuit court, by the decree of October 23, 1875, decided that the single bill of the appellant (Robertson) for $5,917.13, dated July 15, 1862, and payable to John A. Campbell, commissioner, should be settled, to the extent of the amount which might be decreed in favor of said Robertson (he being a creditor of Daniel Trigg), as of its face value, and that any balance on said single bill which might remain unpaid, after deducting from the amount thereof such sum as should be decreed in favor of said Robertson, should be scaled as of the date of said single bill: and this is the ground of the appellant’s second assignment of error. He contends, that the bond was *87 given for Confederate money loaned to him by the commissioner, and that the nominal amount should be scaled and reduced to its true value as of the date of the loan or if treated as a payment for the full nominal amount on the debts owing to him by the decedent, it should be applied as a payment at the date of the bond.;
We are of opinion, that although the bond was given for Confederate money received by Mr. Robertson from Judge Campbell, the commissioner, it ought not, under the circumstances, to be scaled. By decree of September 19, 1856, Judge Campbell, as commissioner, was directed to loan out any money of the estate of Daniel Trigg then in his hands, or which might thereafter come into his hands, taking bond therefor with good security, payable to himself as commissioner; and he was further directed by the same decree to give the undisputed creditors of said Trigg, or such of them as might desire it, the preference of borrowing said funds. Among the debts owing to Trigg’s estate there was a judgment against Thomas L. Preston for a large amount and of long standing. It was, however, safely secured. On the 15th day of July, 1862, Robert Gibboney, Preston’s trustee, offered to pay off this judgment to Campbell, the administrator of Trigg’s estate and commissioner as aforesaid, in Confederate money. Campbell was unwilling to receive the Confederate money, but seeing Mr. Robertson, he informed him of Gibboney’s proposition and said to him, that he would receive the money from Gibboney, if Robertson would borrow the money from him (Campbell) as commissioner. Robertson replied, that he would take the money. Whereupon, Campbell received it from Gibboney, and Robertson took it and gave his bond with surety for it. These facts are shown by Campbell’s statement, which is the only evidence in the record touching this transaction. He concludes his statement by saying, “my impression further is, that I remarked to Mr. Robertson that as be was a large creditor *88 the probabilities were that he would never have to pay. the money back, but I am not so satified as to this as of what--I have before stated. My habit was to loan to the creditors when I could, and this causes me to doubt somewhat, whether the impression above was made by a conversation, or the habit.”
We think the giving a preference in loans to “undisputed creditors,” by the decree of September 19, 1856, indicates an intention that loans, when made under the-decree to such creditors, were to be treated in the further proceedings in the cause as payments, so far as such loans-did not exceed in amount the claims of such creditors, and the statement of Judge Campbell tends to show, that such was the intention in Ihe collection from Gibboney and the-loan to Robertson.
We are, therefore, of opinion that the amount of the-bond of Robertson to Campbell (commissioner) should be treated, without reduction by scale, as a payment at the date of said bond on the debts owing by Daniel Trigg to-said Robertson, whether said debts be owing to him in his: individual right or as a fiduciary. The debt held by Robertson as administrator of Francis Smith, deceased, is practically a debt owing to Robertson individually, as his wife is the sole distributee of Smith’s estate. This was stated in argument by the counsel for the appellees and was admitted by the counsel for the appellant. The decree does not definitely fix the date at which the amount, of the bond is to be credited on the debts held by the appellant. It should be modified in that respect.
The third and last assignment of error by the appellant is, that “the court erred in decreeing that the interest upon the debts of creditors should stop in April, 1856, and that the court erred in overruling the exception of creditors upon that point.”
It is a sufficient answer to this assignment that the exception referred to was waived at the hearing of the cause *89 in the court below. This exception (among others) was filed by Findlay’s executor, and relied upon by the appellant, without making any separate exception. The decree of January 17, 1876, recites that the exceptions of Find-lay’s executor not disposed of by the decree of October 23d, 1875 (among which exceptions not so disposed of was the one for not allowing interest on the debts beyond April, 1856), “not being insisted on, be and the same are now overruled.” The not insisting on the exception was equivalent to a waiver thereof not only by Findlay’s executor, but also by the appellant, who had adopted the exception as his own. Of course, he cannot be allowed to insist in this court upon an exception which he waived in-the court below.
So far as the decrees complained of here are in conflict with the views expressed in this opinion, they will be reversed, and the cause will be remanded to the circuit court for further proceedings to be had therein, in conformity with those views.
The judgment was as follows :
This day came again the parties, by their counsel, and the court having maturely considered the transcript of the record of the decrees aforesaid and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that so much of the decree aforesaid, rendered on the 23d day of October, 1875, as adjudges that the “single bill ” executed by "VYyndham Robertson to John A. Campbell, commissioner, in the year 1862,. should be, to the amount which may be decreed in favor Of said Robertson, settled as of its face value, and that any balance of said single bill which may remain unpaid,, after deducting therefrom such sum as may be decreed .in favor of said Robertson, should be scaled as of the date of the said single bill, is erroneous.
*90 And, for the reasons aforesaid, the court is further of opinion that so much of the decree aforesaid, rendered on the 17th day of January, 1876, as ascertains and adjudges the amount for which Daniel Trigg’s estate is liable to Galt and Robertson for contribution, to be the sum of $2,465.24, with interest thereon from the 25th day of April, 1853, till paid, is also erroneous; therefore it is decreed and ordered that so much of the decrees aforesaid, respectively, as is hereinbefore declared to be erroneous, be reversed and annulled, and the residue thereof be affirmed, and that the appellee, John A. Campbell, out of the estate of Daniel Trigg, deceased, in his hands, whether as administrator of said decedent or as commissioner in this cause, do pay to the appellant his costs by him expended in the prosecution of his appeal aforesaid here. And, in lieu of so much of the decree aforesaid, rendered on the 23d day of October, 1875, as is hereinbefore declared to be erroneous, and is therefore reversed, this court, now proceeding to render such decree as the said circuit court ought to have rendered, it is further decreed and ordered that the full nominal amount of the bond of the appellant, Wyndham Robertson, and his surety, Charles S. Bekem, bearing date on the 14th day of July, 1862, and payable to John A. Campbell, commissioner, to wit: the sum of $5,917.63, be considered and treated, without being sealed and reduced, as a payment at the date of the said bond on the debts owing to the appellant by the estate of Daniel Trigg, deceased, as well as the debt owing to him as administrator of Francis Smith, deceased, as on the debt owing to him in his individual right. And in lieu of so much of the decree aforesaid, rendered on the 17th day of January, 1876, as is hereinbefore declared to be erroneous, and is therefore reversed, this court, further proceeding to render such decree as the said circuit court ought to have rendered, it is further decreed and ordered that, the sum for which the estate of Daniel Trigg is liable to the ap *91 pellee, James Galt, or his personal representative, and the appellant, Kobertson, for contribution, is $3,697.87, with legal interest thereon from the 25th day of April, 1853, till payment.
And it is further ordered that this cause be remanded to the said circuit court for further proceedings to be had therein in order to a final decree, in conformity to this decree and the opinion therein expressed; which is ordered to be certified to the said circuit court of Washington county.
Decree reversed.