(70 App. Div. 579.)

### PEOPLE v. AMERICAN LOAN & TRUST CO.

(Supreme Court, Appellate Division, First Department. April 11, 1902.)

1. INSOLVENCY—PREFERENCE—ATTORNEY'S FEES.
   Claim for fees of attorney for corporation in endeavoring to prevent appointment of receiver, or for services not in connection with a judicial proceeding, or in matter in which there was no judgment, or where his endeavors did not preserve or increase any fund, is not entitled to preference.

2. CORPORATIONS—DISSOLUTION—PREFERENCES—INTEREST.
   Provision in charter of corporation that, in case of its dissolution, the "debts due" from it as trustee shall have a preference, does not give a preference for interest after appointment of receiver.

3. SAME—EXCEPTIONS BY UNPREFERRED CREDITORS—PARTICIPATION IN BENEFIT.
   Only those unpreferred creditors who except to the report of the referee, which applies all the funds to preferred claims, are entitled to participate in funds which by rulings on the exceptions are turned from the preferred creditors.
   Ingraham, J., dissenting in part.

Appeal from special term, New York county.

Action by the people against the American Loan & Trust Company to dissolve defendant. From order of special term (73 N. Y. Supp. 584) granting motion to confirm referee's report as to distribution, certain creditors appeal. Modified.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, PATTERSON, and INGRAHAM, JJ.

B. E. V. McCarty, for appellant Hawes.
V. P. Donihee, for appellant Wickes.
C. L. Stone, for appellant Onondaga Co. Sav. Bank.
C. N. Bovee, Jr., for appellant Union Dime Sav. Inst.
James Dunne, for appellants Bauer et al.
W. S. Opdyke, for respondent.

PATTERSON, J. The several matters requiring consideration in this case are brought up by appeal from an order made at the special terms sustaining some, and overruling other, conclusions of a referee. The duty imposed upon the referee by the order of his appointment was to make a proper distribution among creditors of a balance of moneys remaining in the hands of the receiver of the American Loan & Trust Company. That corporation had been dissolved by an order of the supreme court made on the 1st day of May, 1891, and in and by such order J. Edward Simmons was appointed its receiver. He entered upon the discharge of his duties, collected the assets of the corporation, and from time to time, in pursuance of orders of the court, made payments to preferred creditors of the corporation, but none to unpreferred creditors. Among the preferred creditors are

the Onondaga County Savings Bank, the Monroe County Savings Bank, the Union Dime Savings Institution, and the Farmers' & Mechanics' Savings Bank. These several institutions, with other preferred creditors, have been paid by the receiver the full amount of the principal of their respective claims upon the dissolved corporation. Those claims were for moneys on deposit with that corporation, and under agreements by which interest at varying rates was to be paid upon such deposits. On the 21st day of July, 1891, a dividend of 35 per cent. was paid to the preferred creditors on the principal of their claims; on July 13, 1892, another payment of 35 per cent. was made to them in the same way; on June 21, 1893, another dividend, of 20 per cent., was paid them; and on the 2d of July, 1894, a fourth dividend, of 10 per cent., was paid. Each of these several dividends was receipted for as a dividend on the principal amount of the claims of these preferred creditors. The receipt for the final and fourth dividend recited that it was on and completed the payment of the principal of the claim of the creditor receiving it, as a preferred creditor of the trust company. The referee, in his report, allowed these savings institutions and their preferred creditors interest upon their claims. They had insisted before him that they were entitled to legal interest down to the time of the payment of the first dividend, and that such payments should be treated as being first on acount of interest, and then the balance applied to the payment of the principal, and so on with the three other dividends. The referee did not adopt that contention, but reported that the preferred creditors were entitled to interest upon the principal of their claims down to the time of the payment of the first dividend, then to interest upon the balance as upon a new principal until the payment of the second dividend, and so on through the whole series of payments. The allowance of interest upon the preferred claims, including those of the savings institutions, would exhaust the whole of the balance in the hands of the receiver, leaving nothing for the unpreferred creditors. Certain of those unpreferred creditors, namely, Louis Bower, William L. Koester, and Louise B. O'Connor, individually and as administratrix of James Owen O'Connor, deceased, excepted to the report of the referee. The claims of these parties amount to about $153,000. The aggregate of unpreferred claims allowed by the referee was $455,000, but none of the unpreferred creditors, other than those above named, excepted to the report of the referee. Euphemia A. Hawes, the executrix of the last will and testament of Granville P. Hawes, deceased, presented claims aggregating $14,786.46, and of that amount she claimed to be entitled to a preference for $8,365 on one ground, and to $5,000, with interest, on another ground. The referee refused to allow the preference, but recognized the whole amount of these claims as unpreferred debts. They had their origin in legal services rendered by Mr. Hawes to the American Loan & Trust Company, some of which services, apparently, were continued after the appointment of the receiver. Thomas P. Wickes, as receiver of the firm of Stanton & Co., was included by the referee in the schedule of preferred creditors, and was allowed interest upon the claims of that firm. By the order appealed from, the learned judge at special term, adopting the conclu-

sion of the referee, adjudged that the claim of Mrs. Hawes as executrix was not entitled to a preference. Contrary to the conclusion of the referee, he held that the savings banks and the preferred creditors appearing before him were not entitled to interest. He further held that all the unpreferred creditors were entitled to share in the distributable balance in the hands of the receiver, and not those only who had filed exceptions to the referee's report. The several specific matters we are to consider on this appeal may, therefore, be stated as follows: First. Is the executrix of the last will and testament of Granville P. Hawes, deceased, entitled to a preference of either or both of the items of $8,000 and $5,000 which the referee ranked as unpreferred claims? Second. Are the savings banks and Thomas P. Wickes, receiver, entitled to interest on their respective preferred claims? Third. If those preferred creditors are not entitled to such interest, is the distribution of the balance of the moneys in the hands of the receiver to be made among those unpreferred creditors who excepted to the report of the referee, or is that balance to be distributed among such unpreferred creditors generally?

1. An examination of the evidence respecting the services rendered by Mr. Hawes shows that the summary of the facts in relation thereto made by the referee in his report is an accurate statement of all that Mr. Hawes did under his employment. From those facts no other conclusion was permissible than that reached by the referee. The claim to a preference for these services must stand upon the right to a statutory lien, or the right to a common-law lien as distinguished from a statutory lien, or upon equitable considerations indicating that a fund from which payment is preferentially demanded was either created, in whole or in part, or preserved, by the services of the attorney who makes a specific claim upon that fund. The $8,000 item is for services rendered by Mr. Hawes as the regular attorney and counsel of the American Loan & Trust Company. That corporation was a trustee under a mortgage made to secure bonds of the Decatur, Chesapeake & New Orleans Railway Company. The American Loan & Trust Company held in its own right some $400,000, at par value, of those bonds, and about the same amount of its stock. These securities were held as collateral to a loan made by the trust company to the railway company of about $310,000. The mortgage, upon default of the bonds, was foreclosed, and Mr. Hawes was paid for his services in that foreclosure. He also rendered services in connection with the collateral securities held by the trust company, and it would seem that the claim is made to a lien upon the funds in the hands of the receiver, or a right to a preferential payment thereof, on the ground that Mr. Hawes had some specific right or lien upon the bonds and stocks so held by the trust company as collateral. All that was ever received by the trust company out of these collaterals appears to have been the sum of $5,950. There do not appear to have been judicial proceedings in connection with this collateral security, and hence there was no statutory lien; nor was there any judgment concerning them to which a common-law lien could attach; nor was there anything done by him that created or preserved any of

these securities, or increased in any way a fund, or resulted in any advantage to the receivership or the trust company; and therefore we think, with reference to this item, the decision of the referee was right. As to the $5,000 claim, the services for which that amount is charged were rendered at the request of the American Loan & Trust Company, and apparently not otherwise than in endeavors to prevent the appointment of a receiver of that company. Those services are clearly not entitled to preference in payment out of the moneys belonging to the creditors of the receivership. Nothing came through the opposition to the appointment of a receiver which in any way augmented or preserved the funds of the trust company. Conceding that they are valid claims against the receivership, they are entitled to rank only as unpreferred claims. The disposition made of both these items by the court below we therefore consider to have been correct.

2. Interest upon the preferred claims was not allowed by the special term for the reason, stated in the opinion of the court, that, such preferred creditors having given receipts for and accepted the principal of their claims, they are debarred from now recovering interest. The learned judge held that the interest claimed by the preferred creditors is not contractual interest, but interest as damages for nonpayment of the debts, and the rule is that, where interest is recoverable merely as damages for nonpayment of a debt, the creditor cannot maintain an action for its recovery after accepting the principal; citing cases in support of that proposition. It is very doubtful whether the relations of these preferred creditors to this fund are such as they were deemed to be by the special term; but it is unnecessary to consider that question, for the reason that, as we regard the rights of these preferred creditors, they were not entitled to interest at all, in the situation of this fund, until all the other creditors were fully satisfied. Upon this broad ground we think the decision of the special term may be upheld. The right of these preferred creditors, namely, the savings banks and Wickes, receiver, arises out of the provisions of the charter of the American Loan & Trust Company, and not out of those of the banking law. The charter provision is in the following words:

"In case of the dissolution of the said company by the legislature, the supreme court or otherwise, the debts due from the company as trustee, guardian, receiver or depositary of moneys in court or savings bank funds, shall have a preference."

This provision is in derogation of the well-known rule that, in the distribution of the assets of debtors, equality is equity. The widest scope has been given to the application of that equitable principle, and the provision of the charter of this corporation should not be expanded to cover anything more than such a preference as may reasonably be regarded as having been within the intention of the legislature when that provision was inserted in that charter. The real question is, what is the extent of the preference? And that depends upon the time at which the debt preferred is to be deemed due. The provision is, "in case of the dissolution of the company," the creditors mentioned shall have a preference for debts

due; and we conceive that that provision was made with the intention that the preference should take effect at the time at which all claims against the corporation would be presentable, and that it was not the intention of the legislature to allow either contractual interest or interest as damages to run on indefinitely through all the protracted proceedings that might continue (as they did in this case) for many years after the court took possession of the assets for the purpose of making distribution of them. By the appointment of the receiver, the law took possession of this corporation, stopped its business, and at once entered upon the collection and distribution of its assets. In People v. Insurance Co., 154 N. Y. 95, 47 N. E. 968, the court says:

"It is the day on which the court practically takes possession of the assets of the company for the purpose of distribution among its creditors, and consequently [that] is the day on which the rights of creditors should be ascertained, and the value of their claims determined."

In that case the court cites In re Equitable Reserve Fund Life Ass'n, 131 N. Y. 354, 30 N. E. 114, and quotes from the opinion of Peckham, J., as follows:

"In this case the proceeding had for its end the dissolution of the company. We held that after the commencement of the proceedings no assessments need be levied or paid, and, if the proceedings terminate in dissolution, the status of the claimants at the commencement of the proceedings is the proper one upon which to base the distribution."

These were cases of life insurance companies, involving the rights and relations of policy holders, but they illustrate the rule we think applicable here in construing the words "debts due." We are of opinion that the point of time at which the status of the preferred debts (that is, the amount preferred) is to be fixed is the date of the appointment of the receiver, when the court took into its hands the distribution of the fund, or it may relate back to the institution of the proceeding. The claim is against assets. As against the corporation itself, interest may be continued, and, if there is enough to pay all creditors, would be allowed. There is nothing in the provision quoted of the charter of this corporation which in terms allows interest as part of the preference. "Debts due" from the company in case of dissolution have the preference, and the inference to be drawn from these words is rather that when the company is dissolved the debts then due (which include both owing and payable) to the specified creditors shall have a preference as they exist when that event takes place. The enlargement of this provision into a right to interest on the debts after the dissolution, and until protracted judicial proceedings are terminated, is only done by another and contrary and inequitable inference. The case of Upton v. Bank, 13 Hun, 271, is cited in opposition to our view, but that case is distinguishable. There the court held, under the provisions of section 43, c. 371, Laws 1875, that savings bank deposits were entitled to a preference, with interest to the date of payment. The provision of that law is that all the property of any bank or trust company which shall become insolvent shall be applied by the receiver thereof in the first place to the payment in full of any sum or sums of money deposited therewith by any savings bank. In

the Upton Case no reason is given by the court for allowing interest; but it was taken for granted that, under the provision of the law then under consideration, the savings bank was entitled to interest until it was paid in full. There is a difference between the provision of law in that case and the charter of this corporation. Here the provision merely is that in case of a dissolution the savings banks shall have a preference. We think the rule should be applied that each creditor gets his or its status in proving claims against the assets of the corporation as of the date of dissolution, and that, where preference is given, it takes effect for the amount established as of that date. We have seen that such was the rule in the cases above cited, applied on the dissolution of insurance companies. It is an equitable rule, which in the absence of statutory declaration that another must prevail, ought to be applied here. We think, consequently, that these savings banks are not entitled to interest, either as damages or as arising out of contract, after the appointment of the receiver.

3. Only the unpreferred creditors who filed exceptions to the report of the referee are before this court. It certainly seems inequitable that the exceptants alone should receive the distributable funds in the hands of the receiver, but the other unpreferred creditors have not pressed their claims, nor put themselves in an attitude to receive the benefit of the ruling now made, or to review that of the referee. They acquiesced in his findings, and are concluded thereby.

The order appealed from should be modified by restricting the right of the unpreferred creditors to distribution of the fund created under the exceptions to those who filed exceptions to the report of the referee, and were represented on this appeal.

VAN BRUNT, P. J., and McLAUGHLIN and HATCH, JJ., concur.

INGRAHAM, J. I concur with Mr. Justice PATTERSON, except as to the disallowance of interest upon the deposits by the savings banks; as I think, under the contract between the corporation and the savings banks, the latter were entitled to contractual interest up to the time of payment, and the performance provided for by said contract would include such interest.