(161 App. Div. 479)

UNITED STATES FIDELITY & GUARANTY CO. v. BOROUGH BANK OF BROOKLYN et al.

(Supreme Court, Appellate Division, Second Department. March 13, 1914.)

1. SUBROGATION (§ 33*)—PREFERENCE RIGHT OF STATE.

A subrogee of the state is entitled to assert the state's preference in the payment of a debt due it from an insolvent over other creditors without prior specific liens.

[Ed. Note.—For other cases, see Subrogation, Cent. Dig. §§ 96–98; Dec. Dig. § 33.*]

2. COMMON LAW (§ 3*)—COMMON LAW OF NEUTRAL STATES.

There is no common law of the United States in the sense of a national customary law, distinct from the English common law as adopted by the several states each for itself, applied as its local law.

[Ed. Note.—For other cases, see Common Law, Cent. Dig. §§ 4–8; Dec. Dig. § 3.*]

3. STATES (§ 110*)—PREFERENCE RIGHT OF STATE.

The state's common-law right of preference as a creditor is not so inherent or exclusive in the state as a sovereignty that it cannot be assigned.

[Ed. Note.—For other cases, see States, Cent. Dig. § 108; Dec. Dig. § 110.*]

4. SUBROGATION (§ 33*)—PREFERENCE RIGHT OF STATE.

Neither is it so inherent or exclusive that it cannot be a matter of subrogation.

[Ed. Note.—For other cases, see Subrogation, Cent. Dig. §§ 96–98; Dec. Dig. § 33.*]

5. INSOLVENCY (§ 118*)—PREFERENCE RIGHT AS CREDITOR—WAIVER.

A preference right as a creditor is not waived by filing a claim as a creditor and acceptance of a dividend thereon without complaint or protest.

[Ed. Note.—For other cases, see Insolvency, Cent. Dig. §§ 180, 186, 187, 190–192; Dec. Dig. § 118.*]

6. INSOLVENCY (§ 118*)—FILING CLAIM—"GENERAL CREDITOR."

Stating that a party filed a claim against an insolvent as "a general creditor" means merely that it filed its claim as a creditor, not that the claim affirmatively shows that it thus described itself or was thus denominated or thus described.

[Ed. Note.—For other cases, see Insolvency, Cent. Dig. §§ 180, 186, 187, 190–192; Dec. Dig. § 118.*

For other definitions, see Words and Phrases, vol. 4, pp. 3058, 3059.]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**7. BANKS AND BANKING (§ 80\*) — INSOLVENCY — CLAIM — CONSTRUCTION — "RIGHT, TITLE, AND INTEREST."**

An allegation in a claim against an insolvent bank that the claimant has by virtue of a demand become entitled to all the "right, title, and interest" of the people of the state to the money deposited therein, representing the canal funds of the state, indicated that it stood in the shoes of the state.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 184–196; Dec. Dig. § 80.\*]

**8. WORDS AND PHRASES—"RIGHT."**

A "right" is said to be the legal consequence which attaches to certain facts; that which one person ought to have or receive from another, it being withheld from him, or not in his possession.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 7, pp. 6220–6223; vol. 8, p. 7790.]

**9. WORDS AND PHRASES—CONSTRUCTION—"RIGHT AND INTEREST."**

The words "right and interest" relate to the extent of the ownership of property, and an assignee using them undertakes to transfer whatever of value he owns or holds.

**10. WORDS AND PHRASES—"RIGHTS."**

The word "rights" is generic, common; embracing whatever may be lawfully claimed.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 7, pp. 6220–6223; vol. 8, p. 7790.]

Submission of controversy under Code Civ. Proc. §§ 1279–1281, by the United States Fidelity & Guaranty Company against the Borough Bank of Brooklyn and another.  Judgment for plaintiff.

Submission of controversy pursuant to sections 1279–1281 of the Code of Civil Procedure.  The parties agreed upon the following facts: The plaintiff was and still is a foreign corporation, duly authorized to transact business in the state of New York.  The defendant Borough Bank of Brooklyn was and still is a domestic money corporation, being a banking corporation.  George C. Van Tuyl, Jr., was, prior to the commencement of this action, duly appointed Superintendent of Banks of the State of New York, entered upon the discharge of his duties, and still continues in said office.  On or about April 24, 1907, said Borough Bank of Brooklyn was duly designated as a depository for the receipt of canal funds pursuant to the provisions of law.  On or about April 16, 1909, the United States Fidelity & Guaranty Company executed a bond to the state of New York for the proper security of funds deposited on account of the canal fund of the state of New York, and more particularly guaranteeing that said Borough Bank of Brooklyn would safely keep and well and faithfully account for and pay over all moneys which were then and should thereafter be on deposit in, or held by said bank, or that were due or should become due from said bank, or for which said bank in any way should become liable to the said state.  On or about April 7, 1910, under the provisions of the Banking Law of the state of New York, the Superintendent of Banks of the State of New York took possession of the property and business of said defendant corporation, Borough Bank of Brooklyn, and has ever since retained such possession, and at the present time is engaged in the final liquidation of its affairs.  On or about April 7, 1910, the state of New York had on deposit with the said Borough Bank $51,814.79 belonging to the canal funds of the state of New York.

Thereafter, and on or about April 7, 1910, demand was duly made upon the United States Fidelity & Guaranty Company by the state of New York by reason of its said bond for the payment of the amount on deposit with the Borough Bank of Brooklyn at the time of the failure of said institution, to wit, the sum of $50,000, with interest at the rate of 3 per cent. from July 1, 1909.

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Thereafter and pursuant to said demand, and by reason of the execution of said bond, the plaintiff herein was compelled to and did on April 7, 1910, pay to the Treasurer of the State of New York the sum of $51,814.79, representing the amount of the said deposit. Thereafter the state of New York duly executed and delivered to the United States Fidelity & Guaranty Company its assignment in writing wherein there was assigned to the plaintiff herein, by reason of the aforementioned payment, all and every claim, demand, and right of action which the people of the state of New York, or the Comptroller of the State of New York, or the Treasurer of the State of New York, or any of them, or the Commissioners of the Canal Fund, then had prior to said payment against the Borough Bank of Brooklyn, by reason of there being on deposit with said Borough Bank of Brooklyn the sum of $51,814.79 belonging to said canal fund, and by reason of said Borough Bank of Brooklyn having failed to pay the same. The original of this assignment was duly filed with the Superintendent of Banks on April 29, 1910. On or about September 30, 1910, the Superintendent of Banks wrote to the attorney for the plaintiff herein that the assignment of the state moneys to the United States Fidelity & Guaranty Company had been placed on file in his office, and that the form of said assignment had been approved by the attorney for the Banking Department. The Superintendent of Banks in said communication requested the plaintiff herein to file with him a proof of claim.

Pursuant to such request, the plaintiff, on or about October 3, 1910, duly filed with the Special Deputy Superintendent of Banks in charge of the Borough Bank of Brooklyn a verified proof of claim, wherein it was alleged that the plaintiff herein had by virtue of the aforementioned payment become entitled to all the right, title, and interest of the people of the state of New York to the money deposited in said Borough Bank of Brooklyn representing the canal funds of the state of New York. On October 4, 1910, the Superintendent of Banks duly acknowledged receipt of said proof of claim, and thereafter, and on or about November 28, 1910, said Superintendent of Banks in further acknowledgment of said proof of claim set forth that the same had been duly approved as to form, and the amount verified. On or about October 2, 1911, plaintiff, without complaint or protest, received from the Deputy Superintendent of Banks in charge of said Borough Bank of Brooklyn a dividend of $5,181.47, representing 10 per cent. of the aforementioned claim. At the time such dividend was received, a notice was attached thereto that read as follows:          "New York, N. Y., October 2, 1911.

"State of New York, Banking Department.

"The inclosed check represents a first dividend of 10% of your claim against the Borough Bank of Brooklyn.

"No receipt is necessary.

"Horace S. Andrews, Special Deputy Superintendent."

Thereafter and on or about January 30, 1913, the plaintiff wrote to the Superintendent of Banks as follows:

"On or about April 16th, 1909, the United States Fidelity and Guaranty Company executed a bond on behalf of the Borough Bank of Brooklyn, to the state of New York, conditioned as required by law for the proper security of funds deposited in said institution on account of the canal fund of the state of New York.

"On or about April 7th, 1910, the U. S. Fidelity and Guaranty Company, as surety, duly paid to the Treasurer of the State of New York the sum of $51,814.79, which amount represented the sum on deposit in the Borough Bank of Brooklyn belonging to the canal fund of the state of New York at the time you took possession of said institution.

"At or about the date when such payment was made, the Treasurer of the State of New York, and the Comptroller of the State of New York duly assigned to the U. S. Fidelity and Guaranty Company all their right, title and interest of the state of New York to make claim or demand against the Borough Bank by reason of such deposit. The original of this assignment has already been filed with you, and a claim has been filed with you by reason of such payment having been made, and by reason of the U. S. Fidelity and Guar-

anty Company having become entitled to all the rights of the state of New York by virtue of such deposit.

"By reason of the aforesaid this company became entitled to every right, claim or demand of the people of the state of New York, or of the Commissioners of the Canal Fund against the Borough Bank of Brooklyn, which against the said Borough Bank they or anybody on their behalf had by virtue of such deposit.

"The claim so filed with you is, according to the law and the statutes of this state, entitled to a preference over the claims and demands of all other creditors of the said Borough Bank.

"We wish to call your attention to the foregoing in order that your action in regard to said claim may be governed accordingly.

"The United States Fidelity & Guaranty Company demands that you recognize its claim as a preferred claim, and that payment thereof be made out of the first available funds which come into your hands. Upon such recognition by you of such claim as a preferred claim, you may deduct the sum of $5,181.14 heretofore paid."

No demand that the said claim should be a preferred claim had been made by the plaintiff before January 30, 1913, unless the filing of said assignment can be construed in law to constitute such a demand. After reciting the bond of the surety and payment of the debt, the assignment proceeds:

"Now therefore, in consideration of the said payment by the United States Fidelity & Guaranty Company of New York, N. Y., to the state of New York, as herein above stated, of the said sum of $51,814.79, the receipt whereof is hereby duly acknowledged.

"We, Clark Williams, as Comptroller of the State of New York, and Thomas B. Dunn, as Treasurer of the State of New York, do hereby transfer, assign and set over to the said United States Fidelity & Guaranty Company, all and every claim, demand and right of action which the people of the state of .New York, or we or either of us, or the Commissioners of the Canal Fund, has or had prior to said payment against the said Borough Bank of Brooklyn, arising out of said deposit of said moneys belonging to said fund with said bank and the failure of said bank to pay same."

Thereafter and on or about February 5, 1913, the said Superintendent of Banks notified the plaintiff herein in writing that he doubted the justice and validity of said claim for preference made by the plaintiff against the Borough Bank of Brooklyn, and that he therefore rejected the same. Prior to February 5, 1913, there had been no rejection by the said Superintendent of Banks of the claim of the plaintiff herein. No part of said claim of $51,814.79 has been paid, except the sum of $5,181.47, and there is now due and owing to the plaintiff herein the sum of $46,633.32, with interest thereon from the 7th day of April, 1910. Liquidation of the said Borough Bank of Brooklyn by the Superintendent of Banks is still in progress, and the assets of the said Borough Bank of Brooklyn have not yet been distributed, and there are in the hands of the Superintendent of Banks assets applicable to the payment of claims amounting to more than the sum of $45,000.

The controversy hereby submitted for decision is whether or not upon the foregoing facts the plaintiff is entitled to judgment declaring that it is entitled to the same priority against the assets which were of the Borough Bank of Brooklyn and which are now in the hands of the Superintendent of Banks which the state would have had, had the state attempted to collect said sum of $51,814.79 which was paid as aforesaid by the plaintiff to the state under the circumstances hereinbefore stated. The plaintiff claims upon the foregoing facts that it is entitled to judgment establishing its right, both by reason of the assignment from the state and the law applicable to subrogation, that its claim have priority and is entitled to be allowed as a preferred claim and to be paid out of the assets in the hands of the defendant the Superintendent of Banks, before the payment of other and general claims. The defendants claim that the plaintiff is not entitled to priority and is entitled only to have its claim allowed as a general claim and to continue to receive dividends pari passu with the other general creditors.

Argued before JENKS, P. J., and BURR, THOMAS, STAPLE-TON, and PUTNAM, JJ.

H. Snowden Marshall, of New York City (James A. O'Gorman, Leonidas Dennis, and Isaac H. Levy, all of New York City, on the brief), for plaintiff.

Jeremiah T. Mahoney, of New York City (Warren C. Fielding, of New York City, on the brief), for defendants.

JENKS, P. J. [1] This submission presents the question whether the plaintiff as subrogee of the state is entitled to assert the preference of the state in payment of a debt due the state from an insolvent, over other depositors and creditors who have not prior specific liens. The preference of the state was determined in Matter of Carnegie Trust Co., 206 N. Y. 390, 99 N. E. 1096, 46 L. R. A. (N. S.) 1260. The opinion in that case relieves me from discussion of that preference. I may note that this subject was examined also by many English judges in Giles v. Grover, 1 Clarke & Finn. 72. The equitable doctrine of subrogation contemplates full substitution. Thus in Lidderdale v. Robinson, 2 Brock. 159–168, Fed. Cas. No. 8,337, affirmed 12 Wheat. 594, 6 L. Ed. 740, Marshall, C. J., at circuit, says that the claim of the surety is clothed in equity with the legal garb with which the original contract is invested (cited and approved in Pease v. Egan, 131 N. Y. at page 272, 30 N. E. 102, and in Hays v. Ward, 4 Johns. Ch. 123, 8 Am. Dec. 554, Kent, C., says:

"It is equally a settled principle in the English chancery that a surety will be entitled to every remedy which the creditor has against the principal debtor, to enforce every security, and to stand in the place of the creditor, and have his securities transferred to him, and to avail himself of those securities against the debtor. This right of the surety stands not upon contract, but upon the same principle of natural justice, upon which one surety is entitled to contribution from another."

See, too, Townsend v. Whitney, 75 N. Y. 425–432; United States v. Ryder, 110 U. S. 729–732, 4 Sup. Ct. 196, 28 L. Ed. 308; Lumpkin v. Mills, 4 Ga. at page 354; Pomeroy's Equitable Remedies, §§ 920, 924. I think that this right of preference should be afforded this subrogee, in conformity to this general rule, and not in derogation of that rule be withheld from it. This preference was inherent in the debt. The character of the debt is not affected by the circumstance that it must now be paid to the substitute of the state and not to the state itself. If the debt merely from this circumstance loses this attribute, then he who stands in the shoes of the state loses of the essence of the debt, and he who should in no way be affected by the fact to whom the debt is paid gains from the essence of the debt. There is no equity in such loss or in such gain. Practically adopting the question of Johnson, J., in 12 Wheat., supra, I ask: What have the other creditors to complain of? See, too, Lidderdale v. Robinson, supra; Mathews v. Aikin, 1 N. Y. 595; Lumpkin v. Mills, supra; Jackson v. Davis, 15 App. D. C. 194–202. There are numerous decisions which recognize the application of this general principle. King v. Bennett, 1 Wightwick, 1; Regina v. Salter, 1 H. & N. 274; Regina v. Robinson, Id. 275; Manisty v. Churchill, 39 Ch. Div. 174; United States v. Ryder, supra; Orem v. Wrightson, 51 Md. 34, 34 Am. Rep. 286; Lidderdale v. Robinson, supra; Hayes v. Ward, supra; Sgobel v. Cappadonia,

8 App. Div. 303, 40 N. Y. Supp. 946; Hunter v. United States, 5 Pet. 180, 8 L. Ed. 86; Richeson v. Crawford, 94 Ill. 165; Stokes v. Little, 65 Ill. App. 255; Jackson v. Davis, supra; Lester v. Richardson, 69 Ark. 198, 62 S. W. 62; Robertson v. Trigg's Adm'r, 32 Grat. (Va.) at page 86; Turner v. Teague, 73 Ala. 554; and American Bonding Co. v. Reynolds (D. C.) 203 Fed. 356—where practically the exact question in this case was decided.

I may note here that the defendant's effort to weaken the authority of United States v. Ryder, supra, by the statement that the court on page 734 of 110 U. S., page 196 of 4 Sup. Ct. (28 L. Ed. 308), limited the rule to certain specified cases, is met by pointing out that the court was not expressing a limitation but drawing the distinction between crown debtors in civil matters and in criminal bail; that the purview of the principle is as stated by the court on page 733 of 110 U. S., page 196 of 4 Sup. Ct. (28 L. Ed. 308); and that it seems to me that the subrogee in this case is within it.

[2] The contention that such right of the subrogee must rest upon statute, based upon the fact that there are such statutes in the procedure of the United States court, may be disposed of by reminder that:

"There is no common law of the United States, in the sense of a national customary law, distinct from the common law of England as adopted by the several states each for itself, applied as its local law." Smith v. Alabama, 124 U. S. at page 478, 8 Sup. Ct. 569, 31 L. Ed. 508, citing Wheaton v. Peters, 8 Pet. 591, 8 L. Ed. 1055.

[3, 4] The contention of the learned counsel for the defendant is that the state's common-law right of preference is so inherent and exclusive in the state as a sovereignty that it can be a matter neither of assignment nor of subrogation. But this contention mistakes, what Blackstone calls the "incidental," for the "direct prerogative of the king, as is apparent in the illustration given in Book 1, chapter 7, of the Commentaries (Cooley's [4th Ed.] top star paging 240), where it is said:

"Prerogatives are either direct or incidental. The direct are such positive substantial parts of the royal character and authority as are rooted in and spring from the king's political person, considered merely by itself, without reference to any other extrinsic circumstance; as, the right of sending ambassadors, of creating peers, and of making war or peace. But such prerogatives as are incidental bear always a relation to something else, distinct from the king's person; and are indeed only exceptions, in favour of the crown, to those general rules that are established for the rest of the community; such as, that no costs shall be recovered against the king; that the king can never be a joint tenant; and that his debt shall be preferred before a debt to any of his subjects. These, and an infinite number of other instances, will better be understood, when we come regularly to consider the rules themselves, to which these incidental prerogatives are exceptions. And therefore we will at present only dwell upon the king's substantive or direct prerogatives."

See, also, Holdsworth's History of English Law, vol. 3, pp. 350, 351.

[5] It is also contended that the plaintiff waived any right of preference by filing a claim as a general creditor and by acceptance of a dividend on said claim without complaint or protest. We have to deal with an implied waiver; that is, the defendants must establish (Gib-.

son El. Co. v. Liverpool & L. & G. Ins. Co., 159 N. Y. at page 426, 54 N. E. 23) that such circumstances justify the inference of an intention to waive, or that from them a waiver followed as a legal result (Titus v. Glens Falls Ins. Co., 81 N. Y. 410–419; Kiernan v. Dutchess Co. Mut. Ins. Co., 150 N. Y. 190, 195, 44 N. E. 698). It appears that, after the plaintiff had filed with the State Superintendent of Banks an assignment to it of all and every claim, demand, and right of action which the people of the state, Comptroller, State Treasurer, or the Commissioners of the Canal Fund then had prior to the payment against the Borough Bank by reason of the deposit, the Deputy Superintendent of Banks in charge of the liquidation of said bank requested the plaintiff to file a proof of claim "on the regular forms which had been drawn up" by the departmental attorneys and which theretofore had been forwarded to the plaintiff, and that on October 3, 1910, the plaintiff did as it was asked.

[6] The learned counsel says that the plaintiff filed its claim as "a general creditor." By this expression he can but mean that it filed its claim as a creditor, not that the claim affirmatively shows that the plaintiff thus described itself or was thus denominated or thus described. Thus the plaintiff, upon invitation of the defendant, took a prescribed step towards the collection of its debt. Inherently that debt was entitled to preference in payment out of the fund. But the plaintiff was neither specifically required nor invited to assert the preference at that time, and its omission to do so in specific terms was not to my mind so inconsistent with a subsequent assertion of preference as to say that it was "clearly to be inferred" (Kiernan v. Dutchess Mut. Ins. Co., supra) that it waived such right.

[7] Moreover, the plaintiff alleged in the claim:

"That the plaintiff herein had by virtue of the aforementioned payment become entitled to all the right, title, and interest of the people of the state of New York to the money deposited in said Borough Bank of Brooklyn representing the canal funds of the state of New York."

So far, at least, as the question of intention is concerned, I think that the plaintiff thus indicated that it stood in the shoes of the state.

[8, 9] A right is said to be "the legal consequence which attaches to certain facts" (O. W. Holmes, Jr., The Common Law, 214, quoted in White v. County, 13 Or. 317, 10 Pac. 486, 57 Am. Rep. 20). The words "right and interest" relate to the extent of the ownership of property, and an assignee using them undertakes to transfer whatever of value he owned or held in the judgment assigned. Scofield v. Moore, 31 Iowa, at page 245. In Black's Law Dictionary it is said:

"That which one person ought to have or receive from another, it being withheld from him, or not in his possession. In this sense 'right' has the force of 'claim,' and is properly expressed by the Latin 'jus.'"

[10] The word "rights" is generic, common; embracing whatever may be lawfully claimed. Lonas v. State, 3 Heisk. (Tenn.) 306.

Not only did the plaintiff thus indicate its status, but that status also appeared both in the agreement of the defendant bank, filed with the claim, and in the assignment from the state to the plaintiff, theretofore filed with the Department of Banks.

The partial payment was made through a communication from the Special Deputy Superintendent of Banks, in which was inclosed a check representing a first dividend of 10 per cent., with the statement, "No receipt is necessary." I fail to find any clear intention of waiver of the right of preference inferable from the plaintiff's acceptance of the check "without complaint or protest." This was apparently a part payment from the fund, to which alone the plaintiff must look even with its right of preference. To accept a part payment of a claim out of a fund is, to my mind, not inconsistent with the subsequent assertion of a preference to payment out of that fund.

Nor do I perceive that from these two circumstances relied upon by the defendants a waiver of this right of preference followed as a legal result. It does not appear that the defendants were upon any reasonable belief misled by either of these circumstances to their detriment or disadvantage. As I have said, the preference was inherent in the debt itself; the very existence of the debt established its priority of payment out of the same fund. Therefore the plaintiff's omission, at the time it filed its claim, to assert specifically the preference, or the plaintiff's acceptance of the voluntary part payment without objection or protest, did not operate "as a trap to the other party," to use the words of Doe, J., in Lyman v. Littleton, 50 N. H. 42, 45. Decisions in point are Hunt v. Smart, 8 Tex. Civ. App. 425, 28 S. W. 63; Re Ashland Steel Co., 168 Fed. 679, 94 C. C. A. 165; In re Scott (D. C.) 96 Fed. 607.

Since the writing of this opinion, my attention has been called to the decisions of this court in its first department in the cases of United States Fidelity & Guaranty Co. v. Carnegie Trust Co., 146 N. Y. Supp. 801, and United States Fidelity & Guaranty Co. v. Carnegie Trust Co. et al., 146 N. Y. Supp. 804. I now cite them in support of my conclusion upon the question of preference.

In fine, whatever the plaintiff did, either in filing its claim, in accepting the part payment, and in asserting its preference, were all consistent steps towards the collection of the debt out of this particular fund. There is, of course, no question but that the plaintiff did specifically assert its preference in formal fashion on January 13, 1910.

Finally, I think that the plaintiff is not entitled to interest. People v. American Loan & Trust Co., 172 N. Y. 371, 65 N. E. 200; People v. Merchants' Trust Co., 116 App. Div. 41, 101 N. Y. Supp. 255.

There must be judgment for the plaintiff upon the submission in ac cord with this opinion. All concur.