In the Matter of the Application of the CITY OF NEW YORK Relative to Acquiring Lands for Street Purposes (Neptune and Emmons Avenues).*

Supreme Court, Special Term, Kings County, November 13, 1937.

* See, also, 165 Misc. 309.

578

*Duberstein & Schwartz,* for Andrew W. Tully, trustee in bankruptcy of Thomas Stavrakos.

*Thomas J. Gallagher, pro se.*

*Pettit & Pettit [Carl E. Peterson* of counsel], for Rockaway Point Development Corporation.

LOCKWOOD, J.   On the date title to the property herein vested in the city, Thomas Stavrakos was the owner of fixtures included in damage parcels 117, 118 and 119.   The final decree entered November 20, 1936, contains an award of $700, plus $224.58 interest, for such fixtures.   This fund is now held by the comptroller subject to the following adverse claims: (1) Attorney's lien of Thomas J. Gallagher for services rendered in the proceeding, $231.14; (2) lien of the city of New York for unpaid water charges, including interest and penalties to October 15, 1937, $245.24; (3) claim of the Rockaway Point Development Corporation, $498.65.

The latter claim arises out of these facts: The Rockaway Point Development Corporation was the fee owner of the aforementioned damage parcels and of damage parcel 513, for which awards were made in the sum of $133,517.13, including interest.   When this sum was ready for payment, the comptroller refused to release the warrants until unpaid water charges, amounting to $498.65, were satisfied.   The fee owner claimed these charges were incurred by the tenant Stavrakos, but since they were liens against the property (Greater New York Charter, § 473, as amd. by Laws of 1916,

chap. 602, § 2), the comptroller properly insisted upon payment. The Rockaway Point Development Corporation paid the water charges, and now claims a preferred lien, as subrogee of the city. Additional water charges accrued subsequent to the vesting of title, and it is conceded that the city is a preferred creditor as to this amount.

On May 9, 1936, Thomas Stavrakos filed a petition in bankruptcy, and on the same day was adjudicated a bankrupt. All parties are in agreement that the city should be paid the accrued water charges, and that Stavrakos' attorney is entitled to payment for legal services. They differ, however, as to the order of priority. The trustee in bankruptcy claims the Rockaway Point Development Corporation is merely a general creditor, and asks that the award be disbursed: (1) To the city collector for unpaid water charges; (2) to Stavrakos' attorney for services rendered in the condemnation proceeding; (3) the balance to Andrew W. Tully as trustee in bankruptcy of the estate of Thomas Stavrakos.

Thomas J. Gallagher, Stavrakos' attorney in the condemnation proceeding, asks: (1) That the city be paid the water charges; (2) that he receive $231.14 for his services; (3) that the balance be turned over either to the Rockaway Point Development Corporation or to the trustee in bankruptcy.

The Rockaway Point Development Corporation claims: (1) That it is entitled to $498.65, plus interest, as preferred subrogee of the city; (2) the city should be paid the amount of the additional water charges; (3) that the balance should be turned over to the attorney for Stavrakos for legal services.

The Rockaway Point Development Corporation, in making payment of the water charges, became subrogated to the rights of the city. In *New York University* v. *American Book Co.* (197 N. Y. 294) the plaintiff owned a building which it leased to the defendant. During its occupancy the defendant consumed water, but failed to pay therefor. The plaintiff paid the city and sued to recover from the defendant. The court said (*supra,* at p. 297): " By section 475 the commissioner of water supply is authorized to place meters in certain classes of buildings and the charge made depends solely upon the quantity of water used. In this class of cases there is merely a voluntary purchase by the consumer from the city of such quantity of water as he chooses to buy (*Silkman* v. *Bd. of Water Commissioners* (152 N. Y. 327), and the obligation to pay therefor must primarily rest upon him who buys and consumes the article. As the sale by the city is necessarily on credit, as security for the payment of the debt a lien is imposed on the property itself for any unpaid charge. The plaintiff's property

being thus pledged for the security of the defendant's debt, the plaintiff occupied the position of a surety, and on payment of the city's claim was subrogated to its rights against the defendant."

In *Matter of United States Fidelity & Guaranty Co.* v. *Borough Bank of Brooklyn* (161 App. Div. 479; affd., 213 N. Y. 628) there was involved a question of preference and subrogation. The State of New York was a depositor in the defendant bank when it was taken over by the Superintendent of Insurance. The plaintiff, a surety of the defendant bank, paid to the State of New York the amount of its undertaking, and received an assignment of the State's claim against the bank. The State was conceded to be a preferred creditor. The Superintendent of Insurance, who was liquidating the bank's affairs, contended that this preference did not extend to the surety which had been subrogated to the State's rights. It was held that the plaintiff, as subrogee of the State, was entitled to assert the preference of the State in payment of the debt due from an insolvent over other depositors and creditors who did not have prior specific liens. The court said (161 App. Div. 479, at p. 485): " I think that this right of preference should be afforded to this subrogee, in conformity to this general rule, and not, in derogation of that rule, be withheld. This preference was inherent in the debt. The character of the debt is not affected by the circumstance that it must now be paid to the substitute of the State and not to the State itself. If the debt merely from this circumstance loses this attribute, then he who stands in the shoes of the State loses of the essence of the debt, and he who should in no way be affected by the fact to whom the debt is paid gains from the essence of the debt. There is no equity in such loss or in such gain. Practically adopting the question of JOHNSON, J., in *Lidderdale* v. *Robinson* (12 Wheat. 594) I ask, ' What have the other creditors to complain of? ' "

The subrogee, however, is not entitled to interest. The fund is insufficient to satisfy all the claims, and the rule laid down in *People* v. *American Loan & Trust Co.* (70 App. Div. 579; affd., 172 N. Y. 371) should be applied here. The court in that case recognized the well-known rule that, in the distribution of the assets of debtors, equality is equity, and held (70 App. Div. 579, at p. 584): " As we regard the rights of these preferred creditors, they were not entitled to interest at all in the situation of this fund until all the other creditors were fully satisfied."

And in *Matter of People Norske Lloyd Ins. Co.* (249 N. Y. 139, at p. 147) the court said: " When the fund is insufficient to pay in full all the creditors who have the right to share in it, the burden

of the consequent loss and injury should be equitably distributed among the creditors."

The award should, therefore, be paid out as follows: (1) To Rockaway Point Development Corporation, $498.65; (2) to city collector the amount of the unpaid water charges, together with penalties and interest; (3) the balance to Thomas J. Gallagher for legal services rendered in the condemnation proceedings.

Settle order on notice.